ORIGINAL

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

NORTHERN DISTRICT OF TEXAS
FILED

DEC - 5 2017

CLERK, U.S. DISTRICT COURT
By _____
           Deputy

UNITED STATES OF AMERICA

v.

ALFREDO NAVARRO HINOJOSA (9)

MIGUEL CASAS (10)

MARTIN SALVADOR RODRIGUEZ,
    aka "CHAVA" (11)

HUMBERTO BALTAZAR NOVOA (12)

EDDIE VILLARREAL (13)

CRAIG WOODS (14)

ELOY ALVARADO MONTANTES,
    aka "DON LOY" (15)

JOSE OMAR SANTOYO SALAS,
    aka "OMAR SALAS" (16)

ERICK JOHAN LOPEZ CUELLAR,
    aka "ERICK LOPEZ" (17)

RAUL NUNEZ
    aka "JUNIOR" (18)

CESAR MENDEZ (3)

CRIMINAL NO. 3:16-CR-536-L

> Supersedes Indictment as to new
> defendants that was returned on
> December 6, 2016
>
> Supersedes charges that were
> returned on December 6, 2016, as
> to Defendant Cesar Mendez (3)

## SUPERSEDING INDICTMENT

The Grand Jury Charges:

### Introduction

1.    Defendant **Alfredo Navarro Hinojosa** (hereinafter "**Hinojosa**") was the

principal and owner of numerous nightclubs and businesses in Texas and elsewhere. In

all, **Hinojosa** controlled an empire of over forty entities that brought in revenue of

approximately $107 million between 2014 and 2016.

2.    **Hinojosa's** businesses dealt in large volumes of cash, which **Hinojosa** used as a means for hiding the true nature of certain cash deposits from government regulators. **Hinojosa** and others, including defendant **Humberto Baltazar Novoa**, explicitly discussed laundering cash to hide it from government regulators.  **Hinojosa** and his managers (identified below) used a variety of other techniques, including the use of dozens of shell companies, unusual deposits and transfers, and the transportation of cash from location to location, to conceal certain business activities.

3.    **Hinojosa** and **Novoa** engaged in business transactions with bands who traveled back and forth to Mexico.  These transactions included explicit attempts to launder money for at least one band or for entities that were using the band.

4.    Several of the nightclubs controlled by Hinojosa – including the OK Corral nightclub (Dallas), Far West nightclub (Dallas), and OK Corral nightclub (Fort Worth), were located in the Dallas-Fort Worth Metroplex and were open for business on Fridays, Saturdays, and occasionally on Sundays.  These clubs derived revenue from door sales, the sale of alcohol, and other promotions.  As such, the number of customers visiting the nightclubs was the primary driver of profits at the clubs.

5.    **Hinojosa** hired and was supported by a group of close advisors and family members – including defendants **Miguel Casas**, **Martin Salvador Rodriguez, aka "Chava," Humberto Baltazar Novoa**, Josephine Hinojosa, and others.

6.    **Hinojosa** was a hands-on manager who was deeply familiar with the inner-

workings of his businesses.

7.      In an effort to promote and guarantee profits at his nightclubs, **Hinojosa** and his managers – including **Casas** and **Rodriguez** – openly allowed cocaine to be sold to nightclub patrons. As **Hinojosa** was recorded saying: "we can't really clean it [up - the cocaine sales] because then we lose business . . . man, they got to do business, I told them we don't care . . . we just don't want for everybody to see him . . . . They want it [cocaine] right there. They don't want to go looking downtown." In effect, as **Hinojosa** stated on numerous occasions, if he and his security staff stopped such sales, **Hinojosa** and his business partners would obtain fewer profits at his nightclubs.

8.      Cocaine was sold in baggies that cost $20. Dealers would sell approximately 100-200 baggies of cocaine each weekend that the club was open. Over the time period covered by this superseding indictment, this amounted to multiple kilograms of cocaine being sold through the clubs for hundreds of thousands of dollars.

9.      **Hinojosa, Casas,** and **Rodriguez** permitted certain selected individuals to sell cocaine inside the nightclubs and excluded other dealers. The manner and means of selling the cocaine was similar in each club. The cocaine dealers and their suppliers included, but were not limited, to the following defendants and individuals: **Eloy Alvarado Montantes, aka "Don Loy," Jose Omar Santoyo Salas, aka "Omar Salas," Erick Johan Lopez Cuellar, aka "Erick Lopez," Raul Nunez, aka "Junior," Cesar Mendez,** Juan Antonio Lara, Jose Javier Mendoza-Martinez, aka "Grenas," Humberto Ovila-Cruz, and Mauricio Garcia-Mentado.

10.     Although **Hinojosa** and these managers did not personally sell or handle cocaine, and did not take a direct cut of the cash obtained from the cocaine sales, **Hinojosa**, **Casas**, and **Rodriguez** relied on drug sales inside the nightclubs to drive profits at the clubs.  They knowingly permitted and provided a means for such drug sales to continue at the clubs they owned and operated.

### Defendants, Co-Conspirators, and Entities

At all times relevant to this Indictment:

11.     Defendant **Alfredo Navarro Hinojosa** was a resident of Dallas, Texas. **Hinojosa** was the principal and owner of numerous nightclubs and businesses in Texas and elsewhere.  This included, but was not limited to, (a) the Far West nightclub (Dallas), (b) the OK Corral nightclub (Fort Worth), (c) and the OK Corral nightclub (Dallas). **Hinojosa** partnered with other individuals in these businesses, but maintained primary control over the operations of these businesses.  **Hinojosa** utilized an office located at 201 North Harwood Street in downtown Dallas as his headquarters and personal office. Another nightclub, owned and operated by **Hinojosa**, named Medusa, was located next door to the **Hinojosa** headquarters and personal office.

12.     Defendant **Miguel Casas** was a resident of Dallas, Texas.  **Casas** started working for **Hinojosa** as a bartender, and was continually promoted until he was made General Manager of the nightclubs owned and operated by **Hinojosa** in Dallas.  **Casas** was also the co-manager of the Far West nightclub (Dallas), Far West nightclub (Dallas), and Medusa nightclub (Dallas).  Floor managers of each nightclub reported to **Casas**.

13.     Defendant **Martin Salvador Rodriguez, aka "Chava,"** was a resident of Dallas, Texas.  **Rodriguez** worked for **Hinojosa** since the 1980s.  **Rodriguez** was the co-manager of the Far West nightclub (Dallas), and was responsible for weekly and monthly promotions that were offered at the nightclubs owned and operated by **Hinojosa**.

14.     Defendant **Humberto Baltazar Novoa** was a resident of Dallas, Texas.  **Novoa** was a business partner of **Hinojosa** and also worked as a band promoter.  **Novoa** worked for **Hinojosa** since the late 1990s.  **Novoa** also worked out of 201 North Harwood Street in downtown Dallas.

15.     Defendant **Edward Villarreal** was a resident of Carrolton, Texas.  **Villarreal** was an officer of the Dallas Police Department between September 1994 and October 2015.  Between 2001 and 2017, **Villarreal** also worked as a security consultant and the head of security for **Hinojosa**.  **Villarreal** used his position as a Dallas Police Officer to benefit **Hinojosa**.

16.     Defendant **Craig Woods** was a resident of Dallas, Texas.  **Woods** was an officer of the Dallas Police Department between October 5, 1981, and March 4, 2017.  Between approximately 2001 and 2017, **Woods** also served as private security guard at the Far West nightclub (Dallas).  **Woods** used his position as a Dallas Police Officer to further his work for **Hinojosa**.

17.     Defendant **Eloy Alvarado Montantes, aka "Don Loy,"** was a resident of Grand Prairie, Texas, and was a cocaine and methamphetamine dealer.  **Montantes** supplied cocaine and methamphetamine to other individuals.

18.    Defendant **Jose Omar Santoyo Salas, aka "Omar Salas"** was a resident of Arlington, Texas, and was a cocaine and methamphetamine dealer. **Salas** was supplied cocaine by **Montantes**. **Salas** supplied cocaine to other individuals, who served as cocaine dealers in the bathrooms of the OK Corral nightclub (Fort Worth).

19.    Defendant **Erick Johan Lopez Cuellar, aka "Erick Lopez,"** was a resident of Fort Worth, Texas. **Cuellar** worked as a security guard and transported cocaine to the bathrooms at the OK Corral nightclub (Fort Worth).

20.    Defendant **Raul Nunez, aka "Junior,"** was a resident of Grand Prairie, Texas and Midlothian, Texas. **Nunez** worked as a cocaine dealer in the bathrooms at the OK Corral nightclub (Fort Worth).

21.    Defendant **Cesar Mendez** was a resident of Dallas, Texas. **Mendez** worked as a cocaine dealer at the Far West nightclub (Dallas) and the OK Corral nightclub (Dallas).

22.    Juan Antonio Lara was a resident of Plano, Texas. Lara initially worked as a cocaine dealer in the bathrooms at the OK Corral nightclub (Dallas) and the Far West nightclub (Dallas). Lara eventually took over the role as the supervisor of other cocaine dealers in the bathrooms of these two nightclubs. Lara was previously charged in this same case and pled guilty to possessing cocaine with an intent to distribute that cocaine.

23.    Jose Javier Mendoza-Martinez, aka "Grenas," was a resident of Garland, Texas. Mendoza-Martinez worked as a cocaine dealer in the bathrooms of the Far West nightclub (Dallas) and OK Corral nightclub (Dallas). Mendoza-Martinez was supplied

cocaine by Lara.  Mendoza-Martinez was previously charged in this same case and pled guilty to possessing cocaine with an intent to distribute that cocaine.

24.     Humberto Ovila-Cruz was a resident of Dallas, Texas, and worked as a cocaine dealer in the bathrooms of the Far West nightclub (Dallas) between 2013 and 2016, with certain gaps in between.  Ovila-Cruz was supplied cocaine by an associate of Lara.  Ovila-Cruz was previously charged in this same case and pled guilty to possessing cocaine with an intent to distribute that cocaine.

25.     Mauricio Garcia-Mentado was a resident of Dallas, Texas, and worked as a cocaine dealer in the bathrooms at the OK Corral nightclub (Dallas).  Mendoza-Martinez was supplied cocaine by Lara.  Garcia-Mentado was previously charged in this same case and pled guilty to possessing cocaine with an intent to distribute that cocaine.

26.     Josephine Hinojosa was a resident of Dallas, Texas.  Josephine Hinojosa was the niece of defendant **Alfredo Navarro Hinojosa** and worked a bookkeeper for **Alfredo Navarro Hinojosa** at the 201 North Harwood Street headquarters in Dallas.  On February 1, 2017, Josephine Hinojosa was arrested as she was traveling from Dallas to North Carolina.  Josephine Hinojosa, along with two other individuals, were in possession of approximately fourteen kilograms of cocaine and an electronic copy of the certain books and records associated with the businesses operated by **Alfredo Navarro Hinojosa**.  Josephine Hinojosa was charged in Case No. 3:17-CR-107 in the Northern District of Texas and pled guilty to possessing cocaine with an intent to distribute that cocaine.

27.     The OK Corral nightclub (Dallas) was located at 10733 Spangler Road in Dallas, Texas.

28.     The Far West nightclub (Dallas), also known as the Far West Discotheque, was located at 400 South Buckner Boulevard in Dallas, Texas.  It had previously been located at 7331 Gaston Avenue in Dallas, Texas.  The Far West nightclub (Dallas) moved from the Gaston Avenue location to the South Buckner location in or around the second half of 2012 and into the early months of 2013.

29.     The OK Corral nightclub (Fort Worth) was located at 4200 South Freeway in Fort Worth, Texas.  It also did business as the OK Corral-Babilonia.

30.     The Medusa nightclub in Dallas was located at Pacific Ave in Dallas, Texas, which was next door to 201 North Harwood Street, Dallas Texas, which served as **Hinojosa**'s headquarters and personal office.

## COUNTS ONE THROUGH NINETEEN
Managing a Drug Premises
[Violation of 21 U.S.C. § 856(a)(2) and 18 U.S.C. § 2]

31.     The allegations contained in paragraphs 1 through 30 are realleged and
fully incorporated herein.

32.     On or about the dates listed below, in the Northern District of Texas, the
defendants listed below, did unlawfully and knowingly manage and control the places
listed below as an owner, lessee, agent, employee, occupant, or mortgagee, and did
knowingly and intentionally rent, lease, profit from, or make available for use the places
listed below for the purpose of unlawfully distributing cocaine, a controlled substance,
and knowingly allow others to engage in such activity:

| Count | Date | Place | Defendants |
|---|---|---|---|
| 1 | 1/18/2013 | Far West nightclub (Dallas) | **Alfredo Navarro Hinojosa** **Miguel Casas** **Martin Salvador Rodriguez** |
| 2 | 2/8/2013 | Far West nightclub (Dallas) | **Alfredo Navarro Hinojosa** **Miguel Casas** **Martin Salvador Rodriguez** |
| 3 | 5/17/2013 | Far West nightclub (Dallas) | **Alfredo Navarro Hinojosa** **Miguel Casas** **Martin Salvador Rodriguez** |
| 4 | 6/8/2013 | Far West nightclub (Dallas) | **Alfredo Navarro Hinojosa** **Miguel Casas** **Martin Salvador Rodriguez** |
| 5 | 6/9/2013 | OK Corral nightclub (Dallas) | **Alfredo Navarro Hinojosa** **Miguel Casas** **Martin Salvador Rodriguez** |

| Count | Date | Place | Defendants |
|-------|------|-------|------------|
| 6 | 11/16/2013 | Far West nightclub (Dallas) | **Alfredo Navarro Hinojosa**<br>**Miguel Casas**<br>**Martin Salvador Rodriguez** |
| 7 | 11/16/2013 | OK Corral nightclub (Dallas) | **Alfredo Navarro Hinojosa**<br>**Miguel Casas**<br>**Martin Salvador Rodriguez** |
| 8 | 1/18/2014 | Far West nightclub (Dallas) | **Alfredo Navarro Hinojosa**<br>**Miguel Casas**<br>**Martin Salvador Rodriguez** |
| 9 | 1/19/2014 | OK Corral nightclub (Fort Worth) | **Alfredo Navarro Hinojosa** |
| 10 | 1/19/2014 | OK Corral nightclub (Dallas) | **Alfredo Navarro Hinojosa**<br>**Miguel Casas**<br>**Martin Salvador Rodriguez** |
| 11 | 1/25/2014 | OK Corral nightclub (Fort Worth) | **Alfredo Navarro Hinojosa** |
| 12 | 3/22/2014 | OK Corral nightclub (Fort Worth) | **Alfredo Navarro Hinojosa** |
| 13 | 4/25/2014 | OK Corral nightclub (Fort Worth) | **Alfredo Navarro Hinojosa** |
| 14 | 4/25/2014 | Far West nightclub (Dallas) | **Alfredo Navarro Hinojosa**<br>**Miguel Casas**<br>**Martin Salvador Rodriguez** |
| 15 | 10/18/2014 | Far West nightclub (Dallas) | **Alfredo Navarro Hinojosa**<br>**Miguel Casas**<br>**Martin Salvador Rodriguez** |
| 16 | 3/21/2015 | OK Corral nightclub (Dallas) | **Alfredo Navarro Hinojosa**<br>**Miguel Casas**<br>**Martin Salvador Rodriguez** |
| 17 | 3/21/2015 | Far West nightclub (Dallas) | **Alfredo Navarro Hinojosa**<br>**Miguel Casas**<br>**Martin Salvador Rodriguez** |
| 18 | 3/22/2015 | OK Corral nightclub (Dallas) | **Alfredo Navarro Hinojosa**<br>**Miguel Casas**<br>**Martin Salvador Rodriguez** |
| 19 | 10/14/2016 | OK Corral nightclub (Dallas) | **Alfredo Navarro Hinojosa**<br>**Miguel Casas**<br>**Martin Salvador Rodriguez** |

All in violation of 21 U.S.C. § 856(a)(2) and 18 U.S.C. § 2.

COUNT TWENTY
Conspiracy to Manage a Drug Premises
[Violation of 21 U.S.C. § 846 (21 U.S.C. § 856(a)(2))]

33.     The allegations contained in paragraphs 1 through 32 are realleged and fully incorporated herein.

34.     Between in or about June 2012, and until in or about May 2017, in the Northern District of Texas and elsewhere, the defendants, **Alfredo Navarro Hinojosa, Miguel Casas,** and **Martin Salvador Rodriguez, aka "Chava,"** knowingly and intentionally combined, conspired, confederated and agreed with other persons known and unknown to the Grand Jury, to manage and control certain nightclubs, including the Far West nightclub (Dallas), the OK Corral nightclub (Dallas), and the OK Corral nightclub (Fort Worth), as an owner, lessee, agent, employee, occupant, or mortgagee, and to knowingly and intentionally rent, lease, profit from, and make available for use in the aforementioned nightclubs for the purpose of unlawfully distributing cocaine, a controlled substance, in violation of 21 U.S.C. § 856(a)(2).

All in violation of 21 U.S.C. § 846.

## COUNT TWENTY-ONE
Conspiracy to Structure Transactions to Evade Reporting Requirements
[Violation of 18 U.S.C. § 371 (31 U.S.C. § 5324(a)(2))]

35.     The allegations contained in paragraphs 1 through 34 are realleged and
fully incorporated herein.

36.     In or about May 2015, in the Dallas Division of the Northern District of
Texas, the defendants, **Alfredo Navarro Hinojosa**, **Humberto Baltazar Novoa,** and
others known and unknown to the Grand Jury, conspired and agreed with each other to
knowingly and intentionally commit against the United States the offense of structuring,
attempting to structure, and assisting in structuring transactions with domestic financial
institutions for the purpose of evading the reporting requirements of 31 U.S.C. § 5313(a),
in violation of 31 U.S.C. § 5324(a)(2).

**Means by Which the Object of the Conspiracy was to be Accomplished**

37.     The object of the conspiracy was to be accomplished, in substance, as
follows:

a.  **Hinojosa** maintained a bank account at Regions Bank in Dallas, Texas,
under account number XXXXXX0876, for an entity controlled by **Hinojosa** and known
as Multi-Events Arena, Ltd.  Regions Bank was a domestic financial institution.

b.  **Novoa** was a partial owner and manager of a band named La Energia
Nortena (the "Band").

c.  **Novoa** intended to purchase a touring bus for the Band for $140,725 but

**Superseding Indictment - Page 12**

sought to disguise the source of the funds used to purchase the bus.

      d.  **Novoa** approached **Hinojosa**, while they were working at the 201 North Harwood headquarters, and asked **Hinojosa** to "launder" approximately $100,000 in currency for **Novoa** for purposes of purchasing the bus.

      e.  **Novoa** sought to have **Hinojosa** launder the money to avoid triggering Region's Bank's obligation to file a Currency Transaction Report(s) ("CTR") that would identify **Novoa** and the Band as the source of the funds.  **Hinojosa** agreed to perform the transactions as requested by **Novoa**.

      f.  **Novoa** provided approximately $100,000 in cash to **Hinojosa**.  **Hinojosa** agreed to perform the transactions as requested by **Novoa**.

      g.  **Hinojosa** directed other individuals, including **Casas**, to deposit the approximately $100,000 in cash into a bank account controlled by **Hinojosa**.  The $100,000 was split into two separate deposits at two different branches of Regions Bank on consecutive days.

      h.  Neither **Hinojosa**, **Novoa**, nor those making the deposits at **Hinojosa's** direction, notified Regions Bank that these deposits belonged to **Novoa** or the Band.

      i.  As a result of these deposits and activities by **Hinojosa**, **Novoa**, and Multi-Events Arena, Ltd., Regions Bank filed two CTR's that did not identify the true source of the funds.  These were material misstatements as to the true beneficiaries of the cash. These material misstatements were caused by **Hinojosa** and **Novoa**.

## Overt Acts

38.     In furtherance of the conspiracy and to accomplish the objects of the conspiracy, the defendants, **Hinojosa**, **Novoa**, and others known and unknown to the Grand Jury, committed and caused to be committed various overt acts within the Northern District of Texas, and elsewhere, namely, deposits of United States currency as follows:

- Overt Act 1 – On May 21, 2015, $60,000 in U.S. Currency was deposited into Regions Bank Account Number XXXXXX0876.  The account belonged to Multi-Events Arena, Ltd., a "Performance Theater" business, controlled and operated by **Hinojosa**.  The deposit was made by **Miguel Casas** at the 1717 McKinney Street Branch of Regions Bank.

- Overt Act 2 – On May 22, 2015, $40,725 in U.S. Currency was deposited into Regions Bank Account Number XXXXXX0876.  The account belonged to Multi-Events Arena, Ltd., a "Performance Theater" business, controlled and operated by **Hinojosa**.  The deposit was made by an individual identified here as G.S. at the 1111 West Mockingbird Lane Branch of Regions Bank.

All in violation of 18 U.S.C. § 371 [31 U.S.C. § 5324(a)(2)].

## COUNT TWENTY-TWO
### False Statement in Immigration Document
### [Violation of 18 U.S.C. § 1015(a)]

39.    The allegations contained in paragraphs 1 through 38 are realleged and
fully incorporated herein.

40.    On or about June 13, 2013, in the Northern District of Texas and elsewhere,
the defendant, **Humberto Baltazar Novoa**, under penalty of perjury, and pursuant to
section 1746 of Title 28, United States Code, did knowingly subscribe as true a false
statement in a document required by the immigration laws of the United States or
regulations prescribed thereunder with respect to a fact relating to the registry of aliens by
the Department of Homeland Security.

41.    More specifically, **Novoa** completed an Application to Register Permanent
Residence or Adjust Status ("I-485").  On the form, **Novoa** was asked whether he had
ever been arrested, cited, charged, indicted, convicted, fined, or imprisoned for breaking
or violating any law or ordinance, excluding traffic violations.  **Novoa** truthfully
answered "Yes."  But when an applicant answers "Yes" to that question, they are
required to explain the answer in an attachment.  In his attachment, **Novoa** identified a
DWI arrest in September 2011, the fact that he had been detained by ICE in March 2008,
and an April 2013 arrest for traffic violations.  But **Novoa** knowingly failed to identify
multiple arrests related to domestic violence, including arrests in 2008 and 2009.

**Novoa's** answer on the attachment was false and **Novoa** knew it was false.

All in violation of 18 U.S.C. § 1015(a).[1]

---

[1]      *See United States v. Youssef*, 547 F.3d 1090 (9th Cir. 2008).

COUNT TWENTY-THREE
Making a False Statement to the FBI
[Violation of 18 U.S.C. § 1001]

42.     The allegations contained in paragraphs 1 through 41 are realleged and fully incorporated herein.

43.     On or about May 7, 2015, in the Dallas Division of the Northern District of Texas and elsewhere, the defendant, **Edward Villarreal**, in a matter within the jurisdiction of the Federal Bureau of Investigation ("FBI"), did knowingly and willfully falsify, conceal, and cover up material facts by trick, scheme, and device, and make materially false, fictitious, and fraudulent statements and representations, in violation of 18 U.S.C. § 1001.

44.     More specifically, in or about April 2015, while the Federal Bureau of Investigation ("FBI") was performing an investigation into **Alfredo Navarro Hinojosa, Martin Salvador Rodriguez, aka "Chava,"** and others, **Villarreal** became aware of the investigation, contacted the FBI agents investigating the matter, and offered to assist in the investigation.  The FBI provided certain information related to the investigation to **Villarreal**, who then immediately passed it on to a target of the investigation, **Alfredo Navarro Hinojosa**.

45.     During their conversations regarding the FBI, **Hinojosa** questioned **Villarreal** about what law enforcement would do and the likelihood that the FBI would

find evidence against certain targets of the investigation.

46.      On May 7, 2015, **Villarreal** was questioned by the FBI about whether he

(**Villarreal**) had passed the information provided to him by the FBI to **Villarreal** on to

**Hinojosa**.  **Villarreal** falsely told the FBI he had not.

## COUNT TWENTY-FOUR
Making a False Statement to the FBI
[Violation of 18 U.S.C. § 1001]

47.     The allegations contained in paragraphs 1 through 46 are realleged and fully incorporated herein.

48.     On or about February 24, 2017, in the Dallas Division of the Northern District of Texas and elsewhere, the defendant, **Craig Woods**, in a matter within the jurisdiction of the Federal Bureau of Investigation ("FBI"), did knowingly and willfully falsify, conceal, and cover up material facts by trick, scheme, and device, and make materially false, fictitious, and fraudulent statements and representations, in violation of 18 U.S.C. § 1001.

49.     More specifically, after being warned that it was a federal crime to lie to the FBI, **Woods** falsely stated to the FBI that:  (1) he was not aware of any officers changing, downplaying or falsifying reports related incidents at clubs controlled by **Alfredo Navarro Hinojosa**, and (2) he had never written any police report and did not know how to write a police report.  **Woods** made these statements despite having personally authored a police report which downplayed a violent incident at the Far West nightclub (Dallas).  **Woods** wrote the report in a manner designed to deflect law enforcement attention away from the nightclub and its owner, **Alfredo Navarro Hinojosa**.

## COUNT TWENTY-FIVE
Conspiracy to Possess with Intent to Distribute a Controlled Substance
[Violation of 21 U.S.C. § 846 and 18 U.S.C. § 2]

50.     The allegations contained in paragraphs 1 through 49 are realleged and fully incorporated herein.

51.     Between in on or about August 2012, and in or about May 2017, in the Dallas Division of the Northern District of Texas and elsewhere, the defendants, **Alfredo Navarro Hinojosa, Miguel Casas, Martin Salvador Rodriguez, aka "Chava," Eloy Alvarado Montantes, aka "Don Loy," Jose Omar Santoyo Salas, aka "Omar Salas," Erick Johan Lopez Cuellar, aka "Erick Lopez," Raul Nunez, aka "Junior,"** and **Cesar Mendez**, aided and abetted by each other, knowingly and intentionally combined, conspired, confederated and agreed with each other and with other persons known and unknown to the Grand Jury, to possess with intent to distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(l) and (b)(l)(A).

All in violation of 21 U.S.C. § 846, and 18 U.S.C. § 2.

## COUNTS TWENTY-SIX THROUGH THIRTY-TWO
Possession with Intent to Distribute a Controlled Substance
[Violation of 21 U.S.C. § 841(a)(1) & (b)(1)(C) and 18 U.S.C. § 2]

52.     The allegations contained in paragraphs 1 through 51 are realleged and fully incorporated herein.

53.     On or about the dates listed below, in the Northern District of Texas and elsewhere, the defendants listed below, knowingly possessed with intent to distribute a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841 (a)(l) and (b)(1)(C) and 18 U.S.C. § 2.

| Count | Defendant | On or About |
|-------|-----------|-------------|
| 26 | Jose Omar Santoyo Salas, aka "Omar Salas" | February 7, 2014 |
| 27 | Jose Omar Santoyo Salas, aka "Omar Salas" | February 25, 2014 |
| 28 | Jose Omar Santoyo Salas, aka "Omar Salas" | March 13, 2014 |
| 29 | Erick Lopez Cuellar, aka "Erick Lopez" | January 25, 2014 |
| 30 | Raul Nunez, aka "Junior" | March 22, 2014 |
| 31 | Cesar Mendez | April 25, 2014 |
| 32 | Cesar Mendez | March 21, 2015 |

<u>COUNT THIRTY-THREE</u>
Possession with Intent to Distribute a Controlled Substance
[Violation of 21 U.S.C. § 841(a)(1) & (b)(1)(C)]

54.     The allegations contained in paragraphs 1 through 53 are realleged and fully incorporated herein.

55.     On or about May 22, 2014, in the Dallas Division of the Northern District of Texas and elsewhere, the defendant, **Eloy Alvarado Montantes, aka "Don Loy,"** knowingly possessed with intent to distribute a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(C).

Forfeiture Notice
[21 U.S.C. § 853(a)]

56.    Upon conviction for any of the offenses alleged in Counts One through Twenty and Twenty-Five through Thirty-Three of this Indictment and pursuant to 21 U.S.C. § 853(a), the defendants, **Alfredo Navarro Hinojosa, Miguel Casas, Martin Salvador Rodriguez, aka "Chava," Eloy Alvarado Montantes, aka "Don Loy," Jose Omar Santoyo Salas, aka "Omar Salas," Erick Johan Lopez Cuellar, aka "Erick Lopez," Raul Nunez, aka "Junior,"** and **Cesar Mendez**, shall forfeit to the United States of America all property, real or personal, constituting, or derived from, the proceeds obtained, directly or indirectly, as a result of the respective offense, as well as any property, real or personal, used or intended to be used, in any manner or part, to commit or facilitate the commission of the respective offense.

57.    Upon conviction for the offense alleged in Count Twenty-One of this Indictment and pursuant to 31 U.S.C. § 5317(c)(1), the defendants, **Alfredo Navarro Hinojosa** and **Humberto Baltazar Novoa,** shall forfeit to the United States of America all property, real or personal, involved in the offense and any property traceable thereto.

A TRUE BILL

_____
FOREPERSON


ERIN NEALY COX
UNITED STATES ATTORNEY


_____
P.J. MEITL
Assistant United States Attorney
District of Columbia Bar No. 502391
Virginia Bar No. 73215
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214.659.8680
Facsimile: 214.659.8812
Email: philip.meitl@usdoj.gov


_____
JOHN DELAGARZA
Texas State Bar No. 00796455
Assistant United States Attorney
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214.659.8600
Facsimile: 214.659.8809
Email: john.delagarza@usdoj.gov


_____
ERRIN MARTIN
Assistant United States Attorney
Texas State Bar No. 24032572
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214.659.8600
Facsimile: 214.659.8809
Email: errin.martin@usdoj.gov


**Superseding Indictment - Page 24**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

---

THE UNITED STATES OF AMERICA

v.

ALFREDO NAVARRO HINOJOSA (9)

MIGUEL CASAS (10)

MARTIN SALVADOR RODRIGUEZ, aka "CHAVA" (11)

HUMBERTO BALTAZAR NOVOA (12)

EDDIE VILLARREAL (13)

CRAIG WOODS (14)

ELOY ALVARADO MONTANTES, aka "DON LOY" (15)

JOSE OMAR SANTOYO SALAS, aka "OMAR SALAS" (16)

ERICK JOHAN LOPEZ CUELLAR, aka "ERICK LOPEZ" (17)

RAUL NUNEZ, aka "JUNIOR" (18)

CESAR MENDEZ (3)

---

SUPERSEDING INDICTMENT

21 U.S.C. § 856(a)(2) and 18 U.S.C. § 2
Managing a Drug Premises

21 U.S.C. § 846 (21 U.S.C. § 856(a)(2)
Conspiracy to Manage a Drug Premises

18 U.S.C. § 371 (31 U.S.C. § 5324(a)(2)
Conspiracy to Structure Transactions to Evade Reporting Requirements

18 U.S.C. § 1015(a)
False Statement in Immigration Document
Making a False Statement to the FBI

18 U.S.C. § 1001
Making a False Statement to the FBI

21 U.S.C. § 846 and 18 U.S.C. § 2
Conspiracy to Possess with Intent to Distribute a Controlled Substance

21 U.S.C. § 841(a)(1) & (b)(1)(C) and 18 U.S.C. § 2
Possession with Intent to Distribute a Controlled Substance

21 U.S.C. § 853(a)
Forfeiture Notice

33 Counts

---

A true bill rendered

-------------------------------------------------------------------------------------

DALLAS                                                              FOREPERSON

Filed in open court this 5th day of December, 2017.

-------------------------------------------------------------------------------------

**Warrant to be Issued**

-------------------------------------------------------------------------------------

UNITED STATES MAGISTRATE JUDGE
Criminal Case Pending:  3:16-CR-536-L