IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| v. | § | Criminal Action No. **3:16-CR-536-L** |
| | § | |
| **ALFREDO NAVARRO HINOJOSA (9)** | § | |
| **and HUMBERTO BALTAZAR NOVOA** | § | |
| **(12).** | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is the Defendant's Motion to Suppress Wiretap Intercepts (Doc. 328), filed by Codefendant Humberto Baltazar Novoa ("Codefendant" or "Novoa") on September 19, 2018; the Government's Response to Defendant's Motion to Suppress (Doc. 342), filed October 1, 2018; and Defendant Alfredo Navarro Hinojosa's ("Defendant" or "Hinojosa") Motion to Adopt Pleadings and Motions (Doc. 327), filed September 18, 2018. After considering the motions, response by the Government, evidence, and applicable law, the court **denies** Defendant's Motion to Suppress Wiretap Intercepts as to Defendant Novoa and Codefendant Hinojosa.

### I. Factual and Procedural Background

Novoa is charged with two counts: Conspiracy to Structure Transactions to Evade Reporting Requirements, in violation of 31 U.S.C. § 5324(a)(2), and False Statement in an Immigration Document, in violation of 18 U.S.C. § 1015(a). Novoa is one of eleven codefendants charged in a 33-count Superseding Indictment ("Indictment") that details allegations of money laundering and drug trafficking in the Dallas-Fort Worth area. Hinojosa, a principal and owner of numerous nightclubs and businesses in Texas, allegedly organized the criminal activities and brought in revenue of approximately $107 million between 2014 and 2016.

The Indictment alleges that, since the late 1990s, Novoa and Hinojosa were business partners. Novoa worked as a band promoter and, in concert with Hinojosa, allegedly engaged in money-laundering business transactions with bands that traveled back and forth to Mexico. Both men maintained their offices at 201 North Harwood Street in downtown Dallas, Texas (the "Target Location"). In May 2015, Novoa allegedly received Hinojosa's assistance in laundering money that Novoa intended to use for purchases on behalf of the band La Energia Nortena, which he managed.

The Indictment also alleges that, in June 2013, Novoa, in completing an Application to Register Permanent Residence or Adjust Status, knowingly failed to disclose that he had been arrested for domestic violence on multiple occasions, as required by a question on the form regarding an applicant's criminal history.

The investigation in this case began in late 2012. In August 2013, the Government applied for the first wiretap in this case to intercept communications of a cellular telephone belonging to Codefendant Felix Jesus Cervantes, considered to be a mid-level cocaine supplier. Over the course of the following 21 months, the Government applied for a total of sixteen wiretaps, all of which were authorized by federal district judges in the Northern District of Texas.

Novoa's motion seeks to suppress eight of these wiretaps, specifically those that intercepted: (1) visual, non-verbal conduct and oral communications made in Hinojosa's corporate office and (2) wire communications made over Hinojosa's cellular telephone. These wiretaps correspond with Wire Nos. 8-9, 11-13, and 15-16. Doc. 342 at 3-4.

Novoa challenges the wiretap on statutory and Fourth Amendment grounds. Novoa first argues that the Government's wiretap applications failed to comply with the requirements set forth in Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510, *et seq*. ("Title III"). Novoa contends that, based on the applications' noncompliance with statutory

**Memorandum Opinion and Order – Page 2**

requirements, the communications were intercepted unlawfully and should be suppressed under Title III's exclusionary rule. Novoa specifically contends that the Government made reckless misstatements in its application relating to its prior investigative efforts, and, in so doing, failed to provide "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous," pursuant to Title III's requirements. 18 U.S.C. § 2518(1)(c). Novoa further contends that these misstatements rendered inadequate the Government's showing that the use of wiretaps was necessary because conventional investigative techniques would not suffice. Novoa argues that the Government, prior to installing an audio and video device inside of Hiojosa's corporate office, should have first taken "the least intrusive route" of intercepting Hinojosa's phone and initiating consensual recordings between him and a confidential informant ("CI-4"). Doc. 328 at 2.

Novoa also makes a Fourth Amendment challenge under *Franks v. Delaware*.[*] Novoa contends that the affidavits supporting the wiretap applications contained intentional or reckless false statements and, under *Franks*, the court must determine de novo whether, with the false statements excised, probable cause existed to support the search warrant.

The Government responds that it made no misstatements in the applications. The Government contends that Novoa's argument merely relies on alleged inconsistencies in the wiretap applications, rather than any outside evidence. The Government, citing other portions of the affidavit, provides context for the statements that Novoa identifies as inaccurate to show how they are factually consistent throughout the application.

In response to Novoa's argument that the Government's initial interception of Hinojosa should have targeted his phone rather than target his office, the Government maintains that its

---

[*] 438 U.S. 154 (1978).

**Memorandum Opinion and Order – Page 3**

initial application for Wire No. 8 explained in detail why agents believed that office interceptions were necessary to uncover fully the scope of criminal activities. Agents determined that CI-4 was not allowed to be present in Hinojosa's office for meetings with Hinojosa's innermost circle of trusted employees and family members, during which details of the criminal activity were discussed. The Government, therefore, determined that consensually-monitored conversations with CI-4 would not be as fruitful to the investigation as interceptions of conduct and communications made during those meetings. The Government further maintains that the "necessity" requirement under Title III is not tantamount to an exhaustion requirement and that, prior to wiretapping Hinojosa's office, it used a range of investigative techniques that had failed to uncover fully the full scope of Hinojosa's activities. These techniques included surveillance, confidential informants and undercover agents, search warrants, interviews, pole cameras, trash runs, GPS tracking devices, toll and air time records, pen register information, consensually-monitored conversations and meetings, prior wires, financial information, and limited use of the grand jury. The Affidavit in support of the wiretap sets out the reasons why the grand jury was not used to a greater extent and why arrests were not pursued. The explanations are plausible and not uncommon with respect to an investigation regarding a drug-trafficking organization. The Government contends that, had it initially sought to intercept Hinojosa's phones instead, the application would not have received approval because the Government had not made previous interceptions of him, and the evidence gleaned from the office interceptions was eventually relied upon to gain approval for the cellular interceptions.

With respect to Novoa's Fourth Amendment challenge, the Government argues that he has presented no legally viable argument to the court and is, thus, not entitled to suppression on any grounds. The Government further contends that, even if the court were to determine that any

intentional or reckless false statements were made, the Affidavit without the objectionable statements would still support the requisite finding of probable cause.

## II. Discussion

### A. Statutory Challenge Under Title III

Under Title III, a wiretap application must include a "full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). Congress included this statutory "necessity" requirement to ensure that "wiretapping is not resorted to in a situation in which traditional investigative techniques will suffice to expose the crime." *United States v. Guerra-Marez*, 928 F.2d 665, 669 (5th Cir. 1991) (internal quotation marks and citation omitted). Courts have repeatedly made clear that the "necessity" requirement does not require the government to show "that every other imaginable mode of investigation would be unsuccessful." *United States v. Butler*, 477 F. App'x 217, 220 (5th Cir. 2012) (citing *Guerra-Marez*, 928 F.2d at 669-70). The government only is required to show "that in the particular investigation normal investigative techniques employing a normal amount of resources have failed to make the case within a reasonable period of time." *United States v. Rios*, 277 F. App'x 414, 417 (5th Cir. 2008) (citing *United States v. Krout*, 66 F.3d 1420, 1424-25 (5th Cir. 1995)).

As a preliminary matter, the court notes that Novoa's challenge to the wiretap applications is limited to Wire No. 8, in spite of his general challenge to all wiretaps authorized to intercept Hinojosa's office and cellular telephone, which include Wire Nos. 8-9, 11-13, and 15-16. In support of his motion, Novoa solely challenges statements made in the Affidavit for Wire No. 8 and provides the court no factual bases to consider any potential issues with the other six applications. Novoa's challenge with respect to the other six wires is, therefore, conclusory and

insufficient to merit court review of these six wiretaps. Accordingly, the court will limit its analysis to Wire No. 8 and **deny** Novoa's motion with respect to Wire Nos. 9, 11-13, and 15-16.

Novoa makes two arguments as to how the Government's application for Wire No. 8 failed to meet the "necessity" requirement. First, Novoa contends that the Government made misstatements regarding prior investigative efforts and the capabilities of CIs to infiltrate meetings in the Target Room and Target Location, which precluded the issuing judge from being able to make a meaningful determination as to whether the use of wiretaps was necessary. Specifically, Novoa refers to a paragraph in the Affidavit for Wire No. 8 in which the affiant discusses prior wires. That paragraph states:

> The FBI investigation into the HDTO was initiated on information provided by C-4. There have been several individuals targeted in prior wires throughout this investigation, including six named in this Affidavit. However these wires have only resulted in identifying individuals supplying cocaine and methamphetamine both at the HDTO owned nightclubs and away from the nightclubs. *These prior wires have not intercepted Alfredo Hinojosa or any high-ranking member of the HDTO.* At the current time, the investigation has not identified another target for a wire interception that investigators have the necessary evidence to apply for such an interception.

Aff. in Supp. of Appl., Feb. 25, 2015 at 100-01, ¶ 188 (emphasis added). Novoa points to two wiretap applications previously granted in 1996 and 2014 that are referenced earlier in the Affidavit—one in which Hinojosa was named as an Interceptee in a DEA investigation, and another in which Hinojosa and other targets were named as Interceptees in an FBI investigation. Novoa contends that, since earlier interceptions were authorized, it was a "reckless misstatement" to say that "these prior wires have not intercepted Alfredo Hinojosa or any high-ranking member of the HDTO."

After reviewing the Affidavit and Government's response, the court determines that no misstatement was made in paragraph 188 of the Affidavit as to prior wires. This paragraph

**Memorandum Opinion and Order – Page 6**

discusses the success of prior wires that were authorized "throughout this investigation," which would include Wire Nos. 1-7, authorized between August 14, 2013, and December 1, 2014. The 1996 wire that Novoa references was, as Novoa concedes, authorized in an unrelated DEA investigation; in disclosing this wire, the affiant specifically notes, "This interception was not directly connected to the instant investigation and the interceptions of this number are no longer active." Aff. in Supp. of Appl., Feb. 25, 2015, 34, ¶ 33. As the paragraph Novoa challenges discusses prior wires throughout the instant investigation, the mention of the 1996 wire, which involved a different investigation, does not render the challenged statements untrue.

The 2014 wire, on the other hand, was authorized by Judge Fitzwater on December 1, 2014, as Wire No. 7 in connection with the instant investigation. Wire No. 7 authorized the initial interception of wire and electronic communications for a cellular telephone used by Mario Alberto Hinojosa. Alfredo Hinojosa, Salvador Martin Rodriguez, Maria Guadalupe Loredo, and Hector Hinojosa were named as Interceptees in that application.

The Government's response explains that, when the Government applies for a wiretap, it must identify potential subjects, which are referred to in the affidavit as "Target Interceptees." The designation is, as the Government explains, preliminary. In other words, designating a subject as an Interceptee does not guarantee that he or she will subsequently be intercepted by the wiretap. To this point, the Government states that, although Hinojosa was listed as an Interceptee in the application for Wire No. 7, agents never intercepted communications between Hinojosa and the owner of the cell phone, Mario Hinojosa. Gov't's Resp., Doc 342 at 7. The Government attaches a declaration by Detective Paul Lapiano as proof that Hinojosa was never intercepted by Wire No. 7. Doc. 342-1. The Government's statement in Wire No. 8 that Hinojosa was not previously intercepted by this wire was, therefore, true and is contrary to Novoa's position. To the extent Novoa contends that the other Interceptees listed in the 2014 wire application were successfully

**Memorandum Opinion and Order – Page 7**

intercepted, Novoa provides no evidence to support this contention. Novoa, therefore, has failed to show that the listed Interceptees were successfully intercepted by Wire No. 7 to support his argument that the Government made a misstatement in the Affidavit for Wire No. 8.

Novoa's second and final basis for his argument relates to the "Necessity" section of the Affidavit for Wire No. 8, in which the affiant states the following:

> I do not believe that there is any reasonable use of consensually monitored conversations and or [sic] meetings, largely for the same reasons discussed with respect to the continued use of CI's as a measure to take down the HDTO. The CI's being utilized by the investigations are not currently privy to any of the meetings inside the Target Room or Target Location and are not trusted enough by the HDTO so that the conversations that they engage in would sufficiently uncover the illegal activity being investigated.

Aff. in Supp. of Appl., Feb. 25, 2015 at 100, ¶ 186. Novoa contends that these are misstatements because "CI-4 placed numerous consensual calls to targets throughout this investigation, was allowed into Mr. Hinojosa's private office on a monthly basis, and reported to the FBI on numerous occasions since 2012 that Target Telephone #9 was Mr. Hinojosa's telephone number." Def.'s Mot. to Suppress, Doc. 328 at 6. CI-4, Novoa contends, overheard one business meeting in which Hinojosa and club managers decided that individuals could continue to sell cocaine in restrooms. Novoa argues that the Government, before applying for Wire No. 8 to install a wiretap in Hinojosa's office, should have "taken the least intrusive route" by submitting an application to wiretap his cellular telephone and then initiating consensual recordings between him and CI-4.

Novoa's argument fails to establish that the Government made a misstatement as to CI-4's capabilities of infiltrating the weekly business meetings in the Target Room and Target Location. The Affidavit does state that CI-4 "occasionally" goes into the Target Room "on a nearly monthly basis, up to the current time," but explains that CI-4 "did not have the opportunity to spend an abundance of time in Alfredo Hinojosa's office, as he/she was usually at the Target Location for

only a brief period and had limited access to Alfredo Hinojosa's office, the Target Room." Aff. in Supp. of Appl., Feb. 25, 2015 at 43-44, ¶¶ 54, 58. The meeting Novoa references, which CI-4 overheard, occurred three to four years ago in Hinojosa's old corporate office—not at the Target Room or Target Location. Aff. in Supp. of Appl., Feb. 25, 2015 at 45, ¶ 60. CI-4's opportunity to overhear that one conversation does not undermine the Affidavit's conclusion that CIs, at the time the application was submitted, were "not currently privy to any of the meetings inside the Target Room or Target Location." Novoa, therefore, fails to show any misstatement in paragraph 186 was made.

Novoa also fails to establish that the application for Wire No. 8 did not meet the "necessity" requirement based on his argument that the wiretap should have taken the "least intrusive route" by targeting Hinojosa's phone, rather than his office. Title III does not contain an exhaustion requirement. The purpose of § 2518(1)(c) "is not to foreclose electronic surveillance until every other imaginable method of investigation has been unsuccessfully attempted." *United States v. Collins*, 972 F.2d 1385, 1412 (5th Cir. 1991) (citing *United States v. Webster*, 734 F.2d 1048, 1055 (5th Cir. 1984)). The purpose of the "necessity" requirement is, rather, to show the issuing judge that "in the particular investigation normal investigative techniques employing a normal amount of resources have failed to make the case within a reasonable period of time." *Rios*, 277 F. App'x at 417. In this case, the Government applied for Wire No. 8 on February 21, 2015—over two years after the investigation began in late 2012. Gov't's Resp., Doc. 342 at 1-2. *See Butler*, 477 F. App'x at 220 (determining the government made a sufficient showing of necessity where it did not resort to applying for the wiretaps until two years after the government's investigation began). Before seeking court-authorized intercepts, the Government used numerous other traditional methods, including surveillance, confidential informants and undercover agents, search warrants, interviews, pole cameras, trash runs, GPS tracking devices, toll and air time records, limited use

of the grand jury, consensually-monitored conversations and meetings, prior wires, and financial information. Gov't's Resp., Doc. 342 at 1-2 (citing Aff. in Supp. of Appl., Feb. 25, 2015 ¶¶ 142-195).

In determining that the "necessity" requirement has been met, the Fifth Circuit has affirmed wiretap authorizations based on affidavits that "asserted that informants or undercover agents could not infiltrate the conspiracy at high enough levels to obtain sufficient evidence to prosecute managers of the organization." *Rios*, 277 F. App'x at 417 (quoting *Krout*, 66 F.3d at 1425 (citing *Guerra-Marez*, 928 F.2d at 671, and *Webster*, 734 F. 2d at 1055)). The Affidavit, in paragraphs 54-65, thoroughly explains the extent to which agents used CI-4 to gather information before concluding that CI-4 would not be privy to the weekly closed-door meetings in Hinojosa's office. Agents also used other confidential informants before determining that a wiretap in Hinojosa's office would be necessary to uncover sufficiently the illegal activity being investigated. Novoa fails to point to portions of the Affidavit or offer outside evidence that would indicate CI-4 or other confidential informants had the capabilities of infiltrating Hinojosa's inner circle to determine the full scope of HDTO's criminal operations. The court, therefore, determines that the Affidavit for Wire No. 8 satisfied the "necessity" requirement.

### B. Fourth Amendment Challenge Under *Franks v. Delaware*

Novoa also contends he is entitled to a de novo review of the Affidavit to determine whether probable cause existed to issue the wiretap authorization. Implicit in the Fourth Amendment's Warrant Clause is the assumption that factual allegations necessary to support a finding of probable cause must be truthful. *Guerra-Marez*, 928 F. 2d at 670 (citing *Franks v. Delaware*, 438 U.S. 154, 164 (1978)). Although *Franks* dealt with warrants, the Fifth Circuit has applied the standard to affidavits relied upon in wiretap applications. *United States v. Signoretto*, 535 F. App'x 336, 339 (5th Cir. 2013). A defendant is entitled to a *Franks* evidentiary hearing to

contest the validity of a wiretap authorization if he "makes a substantial preliminary showing that: (1) allegations in a supporting affidavit were a deliberate falsehood or made with a reckless disregard for the truth and (2) the remaining portion of the affidavit is not sufficient to support a finding of probable cause." *United States v. Privette*, 947 F.2d 1259, 1261 (5th Cir. 1991) (citing *Franks*, 438 U.S. at 171).

As the court explained in section (II)(A) of this opinion, Novoa has not identified any misstatements that were made in the Affidavit for Wire No. 8. Even assuming Novoa had correctly pointed out factual inconsistencies in the Affidavit, he has failed to make a substantial showing that the statements were a "deliberate falsehood or made with a reckless disregard for the truth" as required under *Franks*. Furthermore, Novoa makes no legal argument and provides no evidence as to how the Affidavit, with the challenged statements omitted, would not support a finding of probable cause. In making his request for a *Franks* hearing, Novoa merely relies on the arguments he used in support of his statutory challenges, which the court has determined are meritless. For this reason, the court **denies** Novoa's request and declines to suppress the wiretap evidence on the alternative ground.

### III. Codefendant Hinojosa's Motion to Suppress

Codefendant Hinojosa, in his Motion to Adopt Pleadings and Motions, requests that the court include him as a movant in the motion to suppress, but he offers no supporting evidence and does not make any arguments independent of those made by Novoa. Hinojosa's motion merely makes a global statement that he adopts all motions and rulings filed by Codefendants. Accordingly, to the extent Hinojosa is joining in Novoa's Motion to Suppress Wiretap Intercepts, the court **denies** the motion for the same reasons stated in this opinion.

## IV. Conclusion

For the reasons herein set forth, the court **denies** Defendant Novoa's Motion to Suppress Wiretap Intercepts, as well as that of Codefendant Hinojosa. Accordingly, the Government's wiretap intercepts (visual, oral, and wire) and all evidence derived therefrom will not be suppressed and are admissible at trial, subject only to the Federal Rules of Evidence or any other rule or statute governing the admissibility of evidence at a criminal trial.

**It is so ordered** this 7th day of December, 2018.

Sam A. Lindsay
United States District Judge