1          IN THE UNITED STATES DISTRICT COURT FOR THE

2                  NORTHERN DISTRICT OF TEXAS
                        DALLAS DIVISION
3
   UNITED STATES OF AMERICA,      )
4                                 )
                                  )
5                   Plaintiff,    )
   vs.                            )Case No. 3:16-CR-536-L
6                                 )
   ALFREDO NAVARRO HINOJOSA,      )
7  et al,                         )
                    Defendant.    )
8        _____

9          REPORTER'S TRANSCRIPT OF PROCEEDINGS

10        HAD ON MONDAY, SEPTEMBER 20, 2021

11  PARTIAL PRETRIAL CONFERENCE CONCERNING MONEY LAUNDERING

12        BEFORE THE HONORABLE SAM A. LINDSAY,
            U.S. DISTRICT JUDGE PRESIDING
13
         **A P P E A R A N C E S**
14
   MR. P.J. MEITL
15  MS. NICOLE DANA
   MS. MELANIE SMITH
16  US Attorney's Office
   1100 Commerce, 3rd Floor
17  Dallas, TX 75242
   (214)659-8682
18  philip.meitl@usdoj.gov, nicole.dana@usdoj.gov,
   melanie.smith@usdoj.gov
19
   COUNSEL FOR THE GOVERNMENT
20
   MR. CHRISTOPHER W. LEWIS
21  MR. LUKAS Z.S. GARCIA
   Chris Lewis & Associates, PC
22  1717 Main Street, Suite 4625
   Dallas, TX 75201
23  (214)665-6930
   chris@lewisdefense.com, lgarcia@lewisdefense.com
24

25  COUNSEL FOR THE DEFENDANT ALFREDO NAVARRO HINOJOSA

```
 1   APPEARANCES CONTINUED -

 2   MR. RAUL A. CANEZ
     Law Office of Raul A. Canez
 3   P. O. Box 1966
     Fort Worth, TX 76101
 4   817-886-0651
     raul.canez@canezlaw.com
 5
     COUNSEL FOR DEFENDANT CESAR MENDEZ
 6

 7   MR. CHRISTOPHER MONROE KNOX
     Law Office of Chris Knox
 8   900 Jackson Street, Suite 650
     Dallas, TX 75202
 9   (214)741-7474
     chrisknox@knoxcriminaldefense.com
10
     COUNSEL FOR DEFENDANT MIGUEL CASAS
11

12   MR. MICHAEL P. GIBSON
     MR. CARL D. MEDDERS
13   Burleson Pate & Gibson LLP
     900 Jackson Street, Suite 330
14   Dallas, TX 75202
     (214)871-4900
15   mgibson@bp-g.com, dmedders@bp-g.com

16

17

18

19

20

21

22

23

24

25
```

|  |  |  | INDEX |  |  |  |  |
| --- | --- | --- | --- | --- | --- | --- | --- |
|  |  |  |  |  |  | **VOLUME** | **PAGE** |
| HEARING |  |  |  |  |  | I | 4 |
| REPORTER'S CERTIFICATE |  |  |  |  |  | I | 40 |

Charyse C. Crawford, CSR, RPR
1100 Commerce, Room 1544, Dallas, Texas 75242
(214)753-2373 Telephone
Charyse_Crawford@txnd.uscourts.gov or charysecrawford@gmail.com

1    (THE FOLLOWING PROCEEDINGS WERE HAD IN OPEN COURT,
2  WITH ALL PARTIES AND COUNSEL PRESENT.)
3    (PARTIAL TRANSCRIPT OF MONEY LAUNDERING ARGUMENT AT
4  PRETRIAL CONFERENCE.)
5    THE COURT: All right, that is agreed to by the
6  defense.
7    All right, we will go to Mr. Hinojosa's first
8  amended Motion in Limine, document 571.  The first one is
9  that Mr. Hinojosa objects to any evidence that require
10  bad acts or criminal offenses or other acts of alleged
11  misconduct pursuant to Federal Rule of Evidence 404(b).
12  Specifically, he objects to the Government's Notice of
13  Intent to Introduce Evidence Regarding Mr. Hinojosa's
14  Harboring Illegal Aliens.
15    It is the Court's understanding that the government
16  agrees not to reference the fact that Mr. Hinojosa has
17  been indicted on that charge.  So if the government has
18  agreed not to bring that up during the course of trial,
19  it appears that we are all on the same page; correct?
20    MS. SMITH: That is correct, Your Honor.
21    THE COURT: Thank you.  Okay, we have the second
22  matter that Mr. Hinojosa wants to keep out, and that is
23  evidence regarding money laundering.  His basic position
24  is he does not want anyone from the government to refer
25  directly or indirectly that he was allegedly engaged in

1  the criminal act of money laundering because he is not

2  charged with such offense or any violation of an offense

3  of Title 18 United States Code Section 1956.

4      Now, let me hear the government's response on that.

5          MR. MEITL: Yes, Your Honor.

6      Your Honor, this is part and parcel of the issue with

7  Eric Lee as an expert.  The argument by the government is

8  that we specifically reference and allege that

9  Mr. Hinojosa is engaged in money laundering in the

10  superseding indictment.  Those are allegations we have

11  alleged and have to prove as part of our case.

12      He has not been charged with 18 United States Code

13  1956 or 1957, but he is charged in a conspiracy to

14  possess with intent to distribute, and his role in that

15  conspiracy includes among other things his money

16  laundering activities.

17      There are two specific paragraphs in the superseding

18  indictment that address money lauundering, use those

19  words, "laundering of money."  There will be evidence

20  that goes directly to that.  This Court has ruled on

21  that, prior evidence.  It's a fact that's been agreed to

22  be admitted.  We will hear recordings where he discusses

23  cleaning money.  Witnesses will testify this was an

24  effort to do exactly do that.

25      So from the government's perspective, we have

1   alleged it.  We need to prove it, and so we need to be

2   able to reference the fact that keeping out the idea of

3   money laundering would change everything about the case,

4   change the way we have charged it, change our theory, and

5   would make it impossible to try the case as charged.

6           THE COURT: Well, what Fifth Circuit case says

7   that you can do that?

8           MR. MEITL: There are many Fifth Circuit cases,

9   Your Honor, that I cited, United States versus Wilson,

10  United States versus Daccarett, United States versus

11  Tapia-Ortiz, United States versus All Funds that

12  reference the fact that money laundering testimony can

13  come in to a case involving drug trafficking, and that is

14  what is happening here.

15          THE COURT: I know one case, and that particular

16  Fifth Circuit case the person was charged with money

17  laundering in a drug conspiracy.

18          MR. MEITL: Yes, I believe you are speaking of

19  United States versus Wilson, and that is correct.

20          THE COURT: I guess what I am saying in that

21  particular case, the defendant was actually charged with

22  money laundering as well as a drug conspiracy.

23          MR. MEITL: Yes, Your Honor, the reason those

24  cases were cited, and they were cited in our response on

25  Eric Lee.  We were talking about whether expert testimony

1 on these issues should be allowed, but it is correct that

2 he was charged with an 841, 846, and then a 1956 in the

3 Wilson case.

4     Now, we have charged Alfredo Hinojosa in a wide

5 ranging conspiracy and have made specific allegations in

6 our superseding indictment, and those allegations include

7 the fact that he launders money.  We believe there is

8 more than sufficient evidence to lay that allegation.  We

9 will hear testimony about that exact thing.  We will hear

10 his own words saying those things.

11     So it would be, I guess, curious to allow us to

12 present evidence where the Defendant says, "Let's clean

13 some money."  And the witness will say, "I meant launder

14 money."  But then not to allow the government to say that

15 defendant is laundering money, those two things are

16 converse.

17     We have charged him in the conspiracy with the

18 specific theory that his role in the conspiracy was to

19 maintain premises and to launder money, launder drug

20 money.  So the from the government's perspective, it is

21 very straightforward because he is alleged to have

22 engaged in that exact conduct, and there is evidence,

23 direct evidence, his own words, where he is doing that.

24       THE COURT: Let me hear the Defense's response,

25 Mr. Lewis.

1       MR. LEWIS: We don't feel like just because it

2   was just said, I will reference what Mr. Meitl said as

3   part of our theory under the conspiracy to possess with

4   intent to distribute drugs, that he managed the premises,

5   and that he was a money launderer.

6       They charged managing a drug premises.  They have

7   not charged the money laundering, and the question is

8   why?  In I mean, order to figure out what they are trying

9   to do, you have to ask the question, I mean, why do you

10  want to spend so much time talking about a substantive

11  crime that is not charged?

12      And the reason why is I believe they believe that

13  conclusion, but they don't want to be held to a burden of

14  proof regarding the specific points, the specific proof

15  that would be required for this to be on the line, for

16  him to be proven guilty or not guilty.  They don't want

17  to have to prove those elements beyond a reasonable

18  doubt, but they want to talk about him being money

19  laundering.  Because if they are able to do that, then it

20  makes the rest of their case easier.  I think that this

21  is a clear 403 violation.

22      I think this -- it would be akin to pick a crime

23  that is uncharged, and then all of a sudden rather than

24  we are dealing with, I don't know, let's say that it is

25  not money laundering.  Let's say that it is murder, and

1  you sit there and talk about how this guy is a murderer,

2  he is a murderer, a murderer with drugs.  Lots of time we

3  have lots of people get killed.  This guy is a murderer,

4  so we want you to find him guilty for drug conspiracy.

5  It makes no sense.  It is too prejudicial.

6      It is one of those things.  We don't get a say in

7  what crimes we have to defend.  We don't get a say in

8  what goes in the indictment.  So we have got to play the

9  hand that we are dealt, and the hand that was dealt is

10 not a money laundering hand.

11     So for some reason they made the decision we are not

12 going to charge him with money laundering.  Money

13 laundering gets charged all the time.  But we want our

14 cake and we want to eat it too.  We are not going to

15 charge it, but we are going to ask the judge if we can

16 talk about it a whole lot.  We are going to ask the judge

17 if we can bring in an expert witness who talks about

18 money laundering and how you set up companies and shell

19 companies and how it is all related to money laundering.

20 They want to try a money laundering case against Alfredo

21 Hinojosa.  They just don't want to charge it, and they

22 shouldn't be allowed to do that.

23         THE COURT: Well, the question I have for the

24 government is this.  When you talk about 404(b) evidence,

25 you are talking about whether it goes to an issue such as

1  proving motive, opportunity, absence of mistake, plan,

2  knowledge, preparation, identity, and so forth, and

3  intent.

4       So the question I have is, how does it go to prove

5  any of those with respect to the charged counts?

6            MR. MEITL: Your Honor, this is not 404(b)

7  evidence.  This is intrinsic evidence to the conspiracy.

8  We did not notice it as 404(b) evidence.  We do not

9  believe it is 404(b) evidence.

10           THE COURT: Okay, well --

11           MR. MEITL: Our argument is it is not that.  Our

12  argument is that he is charged in a drug conspiracy, and

13  this is direct evidence of his role in that conspiracy.

14  A drug conspiracy, a conspiracy to possess with intent to

15  distribute cocaine includes many types of individuals.

16  In this case, it includes the people who moved the

17  money.  As the Court knows that is a very routine way for

18  the government to charge money launderers.

19       We charge them in drug conspiracies all the time and

20  hold him accountable that way.  We can also charge them

21  other ways, but we charge them in the way that makes most

22  sense for that case.

23       In this case, we charged them in a larger conspiracy

24  and his roles in that include money laundering, and

25  include the maintaining a drug premises, and allowing

1  drug sales to flow through his clubs.

2          THE COURT: All right, so you are saying this is

3  intrinsic evidence?

4          MR. MEITL: Yes, Your Honor, as alleged in our

5  superseding indictment.  Paragraphs 2 and 3 focus

6  entirely on that.  I can read those to the Court if that

7  would be helpful.

8          THE COURT: No, that is okay.  We have looked at

9  them.  All right, one minute, please.

10          (PAUSE IN PROCEEDINGS.)

11          THE COURT: Mr. Lewis, you stated that the

12  government, that is, Mr. Meitl has stated that the

13  government is not using this as extrinsic evidence.  He

14  said extrinsic evidence, and, therefore, is not relevant

15  as to 404(b) evidence.  What is your response?

16          MR. LEWIS: I mean, I know what he is saying.  He

17  is saying what he feels like he needs to say to get into

18  money laundering.  It is not intrinsic.  This is not

19  intrinsic to the case.  This is not intrinsic evidence.

20  I mean, it can be characterized however you want to

21  characterize it.  I mean, it certainly is something that

22  would fall under 404(b).

23      It is something that is governed by 404(b).  It is

24  certainly something that they would claim are other bad

25  acts.  They are trying to characterize it in a way that

1   may potentially fly, but it doesn't change the situation.

2   It doesn't change that what they are trying to do is

3   improper, that they are trying to try a money laundering

4   case without being held to the specific elements of money

5   laundering.

6       THE COURT: All right, I didn't want to state

7   anything incorrectly.  I had my law clerk, Mr. Lattimore,

8   pull a case that I had worked on where we talked about

9   intrinsic evidence, and this is what I want to hear from

10  the government.

11      When we talk about other acts, evidence is intrinsic

12  when one, it is inextricably intertwined with the charged

13  evidence; two, when both acts are part of the same

14  criminal episode; or when the other act was a necessary

15  preliminary step in order for completion of the charged

16  crime.  I want each of those discussed by the government,

17  and tell me which one it falls under.

18      MR. MEITL: Yes, Your Honor, it falls certainly

19  under the first two.  I'm sorry.  I don't have those in

20  front of me, if the Court could repeat them all, I will

21  address them.

22      THE COURT: Sure.  One example of intrinsic

23  evidence is when it is inextricably intertwined with the

24  charged offense.  Let's discuss that one.

25      MR. MEITL: Yes, Your Honor.  Here, the

1  government's allegations against Mr. Hinojosa is that his

2  role in the drug conspiracy is that he launders money

3  that is conducted to drug trafficking, and that he then

4  allows others to sell drugs in his night clubs and he

5  profits off of that.

6        That is the theory of the government.  That is the

7  charge.  We put that in our superseding indictment.  That

8  is the entire crux of our case against Mr. Hinojosa as to

9  the conspiracy.  So, therefore, not only is it

10  intertwined, it is the entire allegation.

11         There is no allegation that Mr. Hinojosa personally

12  possessed cocaine and handed it out to people below him.

13  There is no evidence of that.  We have never suggested

14  that.

15        He was much higher than that, and his role was to

16  allow others to do it, and then to move the money.  That

17  is our allegation.  That is why he is charged in a drug

18  conspiracy.  That is what the grand jury found.  That is

19  where we are.  There has not been a motion to dismiss

20  based on that.  There has not been a motion the strike

21  surplusage from the indictment based on that.  That has

22  been the government's theory since we indicted the case

23  years and years ago.  Nothing has changed about that.  It

24  is inextricably intertwined, if not central to the

25  government's allegation.

1    THE COURT: All right, the second is when both

2    acts are part of the same criminal episode.

3    MR. MEITL: Yes, Your Honor.  So his role in the

4    conspiracy is to launder money.  Without the laundering

5    of the money, the conspiracy falls apart.  There is no --

6    it is the central part of the clubs role in trafficking

7    drugs.

8    So both parts -- I guess I am trying to understand

9    what they mean both parts -- but his role, laundering

10    money, is absolutely part of the conspiracy.  It is

11    connected to it.  It is part of it.  It is his central

12    role.  I am not sure what they are referring to as both

13    parts.  I'm trying to think that through.

14    THE COURT: "When both acts are part of the same

15    criminal episode," that is what the Fifth Circuit said.

16    MR. MEITL: So, Your Honor, if the two acts being

17    the drug trafficking and the laundering of the money,

18    they are necessary for each other.  One doesn't succeed

19    without the other.  You can't just sell drugs and then

20    hold the money.  You have to figure out a way when you

21    are working in these large of numbers to launder the

22    money.  That is exactly what we will be able to prove

23    during this trial both through eyewitnesses and

24    co-conspirators and through our expert.

25    THE COURT: I think you addressed the third one,

1  the third one is the other act, quote, unquote, was a

2  necessary preliminary step for the completion of the

3  charged crime.

4          MR. MEITL: You are right.  I did address that as

5  well.  Your Honor, you can't succeed in a large scale

6  drug trafficking organization without the laundering

7  money.

8          THE COURT: What are the describing as the

9  criminal episode?  It talks about when both acts are part

10 of the same criminal episode.  What is the criminal

11 episode to which you are referring?

12         MR. MEITL: The criminal episode here would be

13 charged conspiracy and count -- one moment, Your Honor.

14         (PAUSE IN PROCEEDINGS.)

15         MR. MEITL: Count 25, Conspiracy to Possess with

16 Intent to Distribute a Controlled Substance.  We allege

17 between August 2012 and May 2017, Mr. Hinojosa and

18 several other defendants engaged in that conspiracy.

19 That is the criminal episode.  That is a drug trafficking

20 conspiracy.  Money laundering is part and parcel of it.

21         THE COURT: What about Count 21?

22         MR. MEITL: Count 21 is a conspiracy to structure

23 and evade -- I am sorry -- give me one second.  I want to

24 make sure I am citing the right one.  That is the

25 Conspiracy to Structure to Evade Reporting requirements.

1 That is a very specific set of actions that Mr. Hinojosa

2 took.  Certainly, the conversation where he is asked to

3 clean money and agrees to do so as part of that is the

4 key evidence in there.  He is not charged with money

5 laundering in that count, but again, that -- that is one

6 of the overt acts or one of the primary acts that make up

7 his role in the overall conspiracy as well, the

8 conspiracy to distribute drugs.  I am sorry.

9  So Count 21 in many ways is subsumed into Count 25.

10 It will be the government's position if they find

11 Mr. Hinojosa guilty of Count 21, they should necessarily

12 find him guilty of Count 25.  Now, there are other ways

13 they could find him guilty of Count 25 if they didn't

14 find in 21, but Count 21 effectively satisfies his role

15 in the conspiracy.

16  THE COURT: Thank you, Mr. Meitl.

17  Mr. Lewis?

18  MR. LEWIS: Yes, Your Honor.

19  THE COURT: Do you wish to respond or reply to

20 this argument by the government?

21  MR. LEWIS: Your Honor, we stick by our original

22 assessment.  First of all, what Mr. Meitl is saying is

23 not fact about the cleaning money, about that.  It's

24 conclusion that works into his theory.  These are his

25 theories and, of course, there will be ample fighting

1    about that during in trial.

2         That he is a money launderer is a conclusion.  It

3    is not -- he wants to say it because it is so

4    inflammatory, and he is not required to prove it.  He can

5    just say, for instance, that they are rolling bags of

6    money in there  without there being any evidence, maybe a

7    cooperator that says it's true, but we actually have the

8    envelopes that did not contain any money.

9         So for every conclusion that he states, I too have

10   a conclusion, but and they are competing, but the idea

11   that -- and he doesn't have to have -- by the way, he

12   doesn't have to have the money laundering because he has

13   got him -- if they got him on managing a drug premises.

14   Then the drugs that are allegedly sold out of the

15   premises are part of the conspiracy.  That is the

16   conspiracy.  But they want to throw in the money

17   laundering without proving the elements of money

18   laundering.  They want to talk about it.  They want to

19   call him a money launderer because then it becomes scary.

20   Then their burden becomes a little bit less because they

21   have confused the issue.  They have brought in other bad

22   things without having to be subject to 404(b) by calling

23   it intrinsic, they are going to make this case about

24   money laundering.  They want this to be a money

25   laundering trial.  They just don't want to charge him.

1  Why don't they want to charge it?  They don't want to

2  charge it because they can't prove the elements beyond a

3  reasonable doubt.  So what is the next best thing -- the

4  next best thing is well, if we can talk about it.  If we

5  can call him this, if we can name him, then it makes our

6  likelihood of success on these other things maybe just a

7  little bit better.

8      But What it really does is it confuses the issues.

9  It is the danger of unfair prejudice, substantially

10 outweighs any probative value whatsoever.  So, once

11 again, we don't get to pick our charges, but this is a

12 situation where they are trying to make the whole case

13 about money laundering, and that is what they have the

14 least amount of evidence on is money laundering.

15      THE COURT: Well, the defense is saying 404(b),

16 and the government is saying it is intrinsic.  In other

17 words, the government is saying you do not even consider

18 or call into play the Beacham case.  They are saying it

19 is intrinsic.  It is not 404(b) evidence, that it falls

20 within the definition of intrinsic evidence.

21      I guess by the same token, Mr. Lewis, I would like

22 to hear you address those three things that the Court

23 talked about about intrinsic evidence.  In other words,

24 when you talk about intrinsic evidence, we are talking

25 about evidence being intrinsic when it is inextricably

1  intertwined with the charged offense, or when both acts

2  are part of the same criminal episode, or whether the

3  other act was a necessary preliminary step toward the

4  completion of the charged offense.

5       I want you to tell me why each one of those, and I

6  would be happy to repeat them for you as you go through

7  them does not apply.

8       The first one is whether the evidence concerning

9  money laundering is inextricably intertwined with the

10  charged offense.

11            MR. LEWIS: It's not.

12            THE COURT: What charged offense are we talking

13  about?

14            MR. LEWIS: Any of them.  It doesn't apply to any

15  one of these things.  I mean, we know that they did all

16  of these control buys.  They marked their bills.  They

17  did that.

18       I don't know that you know that the FBI then goes

19  in, and there is a Loomis deposit that has all the cash

20  from the club the night before because they were

21  convinced that Mr. Hinojosa was getting a benefit of that

22  cash, that that was part of the cash that he was

23  laundering.  They didn't find one marked bill, not one

24  that they used that they used to go in and buy dope with.

25       There is no evidence of money laundering in this

1 case.  Now, they can say it.  They can try to make it, so

2 it is not inextricably intertwined because it didn't

3 happen.

4      So on a normal drug conspiracy case, are we talking

5 about some guys that are unassociated with a premise

6 going into the premise, selling dope out of bathrooms.

7 That is not a normal drug conspiracy case.  Normal drug

8 conspiracy cases, people get busted with a bunch of dope,

9 and you know there is money associated with that dope and

10 where is the money going.  That is not how this even

11 occurred.

12      Their original working theory was this that

13 Alfredo Hinojosa must have been supplying the dope to the

14 people in the bathrooms.  Nope.  That was wrong.  The

15 second one.  He must have been receiving a financial

16 benefit, a direct financial benefit from the people

17 selling the dope in the bathrooms.  No.  Completely

18 wrong.

19      They change it again.  Now, the third one is well,

20 he didn't know the guys in the bathroom that were selling

21 the dope.  He didn't supply the drugs.  He didn't receive

22 a direct financial benefit, but he must have received an

23 indirect financial benefit because his patrons wanted to

24 come to the club.  When they come to the club, if

25 somebody wanted to go a bump of cocaine, they wanted to

1  be able to do it there.

2      So there was an indirect financial benefit in that it

3  was something that some of his patrons wanted.  I can't

4  argue a negative.  This is not a money laundering case

5  and, it is not a normal drug conspiracy case.

6      They are saying he didn't do enough to eradicate it.

7  He knew it was going.  He thought it was indirectly

8  financially beneficial to his business.  He didn't do

9  enough to eradicate it.  That's their case.  But the

10 problem is if that's all they talk about, if that's what

11 they want, it is not all that salacious, but if we can

12 call him a money launderer, if we can say he has all of

13 these different companies and that is consistent with

14 somebody who would do money laundering.

15      So it is all this innuendo which is what a trial is

16 not supposed to be.  It is not supposed to be about

17 innuendo.  Read Eric Lee's his designation.  What he is

18 saying this is consistent with somebody who would

19 possibly be doing this, we are going to spend the

20 majority of the trial what might have happened and what

21 typically happens in the money laundering situation, and

22 they want to make that shoe fit on Alfredo Hinojosa, and

23 they didn't charge it.  It doesn't fit any of these

24 things unless you accept the proposition that he was

25 laundering money.

1      That has not been proven and it can't be proven

2  because there is not even enough to charge him that is

3  why they didn't charge it.  This wasn't some sort of

4  plan, you know, we got him on money laundering, but we

5  are not going to charge him because we are going to do it

6  this way.  No, they can't prove it.  The next thing we

7  don't have to prove it as long as they let us talk about

8  it.  So that is why it shouldn't be allowed.

9      This is 403 one hundred percent.  It is unfairly

10  prejudicial.  It doesn't have anything to do with this

11  case.

12          MR. KNOX: Judge, may I speak briefly.

13          THE COURT: Well, is your client charged with

14  this?

15          MR. KNOX: No, Judge.

16          THE COURT: You can have a seat then.

17          MR. KNOX: But he is the conspiracy that the

18  government has just spent --

19          THE COURT: Wait just a minute.  Remember what I

20  said earlier, that was about if your client is not

21  charged with a particular count, then I don't know why

22  you would be objecting.

23          MR. KNOX: Count 25 is the conspiracy with all of

24  us.

25          THE COURT: That's why I asked the question.  You

1  said no at first.  The way I understand it, it appears to

2  me that we are talking about Counts 21 and 25; is that

3  correct?

4       MR. KNOX: I believe so, yes, sir, Judge.  Those

5  are the two conspiracies.  My client is, in fact, charged

6  in Count 25.

7       THE COURT: Okay, all right.  If your client is

8  charged with one of the counts, you have the right to

9  talk about it.

10      MR. KNOX: So I think from a peripheral, Judge,

11 from a different perspective, this is the danger here in

12 raising this is that it is 403 certainly for Mr. Casas.

13 It is irrelevant.  It is not charged

14 conduct.  The government could have charged it, but now

15 they are in here saying that without Mr. Hinojosa's role

16 as laundering money, the conspiracy with my client falls

17 apart.  And to me, the mental gymnastics to grasp that

18 when Mr. Casas's charges as far as I have understood it

19 thus far is managing a drug premise will certainly cause

20 me to have to explore money laundering issue.  I don't

21 see anyway around it what the Court represented to the

22 Court.

23      I would like to point out to the Court, based on

24 the definition of intrinsic evidence, paragraph number 10

25 of the government's superseding indictment specifically

1  says, "Although Hinojosa and these managers did not

2  personally sell or handle cocaine, did not take a direct

3  cut of cash obtained from the cocaine sales, Hinojosa,

4  Casas, and Rodriguez relied on the drug sales inside the

5  night club to drive the profits.  They knowingly

6  permitted and provided a means for such drug sales to

7  continue at the clubs that they owned and operated."

8      I have no earthly idea why money laundering would be

9  intrinsic with what the government has written in

10  paragraph 10 of their own superseding indictment.  This

11  is the elements that they are trying to prove or at least

12  some of the elements as it pertains to managing a drug

13  premises.  The government could have charged money

14  laundering.  They did not.  It's a back door and a back

15  door that Mr. Casas will have to also defend as it

16  pertains to the conspiracy.

17      MR. MEITL: Your Honor, if I may, I have five

18  cases where courts including the Fifth Circuit has

19  allowed this kind of evidence brought into a drug

20  conspiracy and found it to be intrinsic.  I can identify

21  those for the Court.  They are also in docket 473, page

22  7.  This was in a filing that the government made.

23      Let me read some parentheticals if it is helpful.

24  This a Fifth Circuit case.  "Finding that certain

25  financial transfers not charged in the indictment were

1 inextricably intertwined with the transactions charged in

2 the indictment as part of a single fraudulent scheme and

3 were admissible as intrinsic evidence."

4     United States versus Gonzalez, the parenthetical

5 says, "finding that evidence of other financial

6 transactions are admissible as direct evidence to prove a

7 defendant's involvement in a conspiracy to conduct

8 financial transactions involving proceeds of narcotics

9 trafficking."

10     Then there is United States versus Lorenzana-Cordon

11 case, "finding evidence regarding laundering drug

12 proceeds is intrinsic to the drug trafficking

13 conspiracy."

14     And then a D.C. Circuit case, United States versus

15 Tarantino, quote, Laundering of funds is a part of the

16 plan to distribute cocaine.  A conspirator well knows

17 that cocaine money has to cleaned up to be useful to

18 them.

19     It is not the government making this argument.  It

20 is the courts saying this, and the courts finding this

21 exact thing.  That is what the government has relied

22 upon.

23     As to Mr. Knox and Mr. Medders, I think Mr. Medders

24 is going to join with Mr. Knox that the allegations of

25 money laundering against those defendants, we don't have

1  those allegations.  The allegations of money laundering

2  is Mr. Hinojosa.  Mr. Hinojosa is the one who is

3  laundering the money.  He is the one in charge.

4  Their role in the conspiracy is that they maintained a

5  drug premises and knowingly allowed that to occur,

6  encouraged it, instructed it.

7       Beyond that, you won't hear evidence related to the

8  money laundering activities of Mr. Casas and

9  Mr. Rodriguez because we are not presenting that.

10  Finally, Mr. Lewis has the narrative of why we did what

11  we did. He is incorrect.  We followed the evidence where

12  it went.  We charged the crimes that were committed.

13  That's what happened.

14       I know he thinks he has it right, but that's not

15  what happened.  We charged the crimes that were committed

16  following our investigation.  We never at any point

17  thought Mr. Hinojosa was the one handing the cocaine to

18  the bathroom dealers.  That was never the government's

19  theory from the day it started, and I was there because I

20  was here for the day it started.

21           MR. LEWIS: Your Honor, just what he said just

22  then.  We charged the crimes that were committed, yet

23  money laundering was not one of them.

24           MR. MEITL: That is not what I said.

25           MR. LEWIS: You did say that.

1          MR. MEITL: I said we charged the crimes that

2    were committed.  He is charged in a drug conspiracy.  His

3    role in that is to engage in money laundering and to

4    maintain a drug premises.  That is what we call the

5    facts.  He wants us to charge other crimes.  We didn't do

6    that.  That is not for anyone to decide.  The issue is

7    the crimes that are charged and his role.  If the Court

8    removes half of the allegations that Mr. Hinojosa was

9    involved in, even though we are going to have evidence of

10   a specific recording where his voice is on there saying

11   "Let's clean some money," the jury is going to be

12   confused by that I would think because they are going to

13   hear evidence of that.  They are going to want to know

14   what is going on and yet the government can't talk about

15   it?  That doesn't strike me as making much sense.  And

16   finally, Judge --

17          THE COURT: Let me ask this question because both

18   sides are going to have to clean up their respective

19   position.  Nobody has addressed confusion.  Here we are

20   lawyers and the judge talking over this issue.  It is

21   causing this much debate, this much controversy.  How are

22   twelve lay people going to understand it insofar as

23   processing the information in determining how to find the

24   Defendants guilty.

25          MR. MEITL: Your Honor, I think that is a very

1  good point that is why we have expert.  Just so we are

2  clear about that.

3           THE COURT: Well, before we do that.  Even before

4  that, I guess there seems to be something -- well, there

5  is.  There is something that has not satisfied this

6  Court's concern about confusion, and that's where 403

7  comes in.  Even if evidence is relevant and all of that,

8  403 has about four or five different categories whereby

9  the Court can exclude evidence, if it is unduly

10 prejudicial, if it causes confusion to the jury, if it

11 constitutes a waste of time, if it -- there are a couple

12 of others.  I can't recall.  My memory is lapsing at this

13 time because we have been talking about so much.

14    But the key is what I am concerned about really more

15 than anything are unfair prejudice and confusion.

16           MR. MEITL: Yes, Your Honor.

17           THE COURT: Because let's make it clear.  How do

18 we explain what type of instruction can there be given to

19 explain that Mr. Hinojosa is not charged in any count

20 with money laundering, but nevertheless we are discussing

21 it?  How is the jury going to process that information so

22 that it is not confused?

23           MR. MEITL: I think it would be very simple, Your

24 Honor.

25           THE COURT: Well, it may be simple from the

1  government's perspective, but I am looking at overall

2  fairness.  Are you talking about a limiting instruction?

3  I think one of the cases that maybe the government cited

4  said the Court give a limiting instruction -- I think it

5  was a Suarez case, I believe, if my memory is correct.  I

6  believe it was the Suarez case.  The Court gave an

7  instruction that that defendant was not charged with such

8  and such crime, or something to the effect that you are

9  often here to determine whether or not the defendant is

10  guilty of the counts charged in the indictment.

11       I think the defense's concern is this, you said

12  quite simply.  I think their concern is quite simply

13  this.  Is the person going to be convicted because the

14  jury believes he laundered money or because the jury

15  believes that he committed the elements of the counts in

16  the indictment?

17       MR. MEITL: Your Honor, I think it will be very

18  simple that we will be saying in opening statement or

19  thereabouts that he is charged in a drug conspiracy.  The

20  evidence will show that he engaged in that conspiracy in

21  two ways.  He maintained a drug premises and allowed

22  others to sell drugs and engaged in the money laundering

23  of the drug proceeds.

24       We will prove that during the trial.  Count 21 is a

25  Conspiracy to Structure Transactions to Evade Reporting

1 Requirements.  There will be evidence, his own words --

2          THE COURT: Who is going to define money

3 laundering?

4          MR. MEITL: We have proposed that our expert

5 identify it for the jury.  It's a complicated issue that

6 they --

7          THE COURT: No, experts don't tell the jury what

8 the law is.

9          MR. MEITL: We are not asking that, Your Honor.

10          THE COURT: That is effectively what you are

11 saying.  The expert does not tell the jury what the law

12 is about money laundering.  Now, that -- I know I can

13 pull up some cases on that about the law.  Experts do not

14 tell the jury what the law is.  That is a big problem, if

15 that is the approach that is being made

16          MR. MEITL: Your Honor --

17          THE COURT: Let me finish, and I will let you

18 make a record.  I am not saying how I am going to rule on

19 this, but the quote, unquote, expert, and let me go ahead

20 and say this before I forget this.  During the trial, we

21 are not going to use the term "expert."  You will say

22 opinion witness or 702 witness.  I want to make that

23 perfectly clear.  Do not ask any witness whether he or

24 she has been qualified as a, quote, unquote, expert.

25      The Fifth Circuit is clear on that.  They have

1  cited -- they have done a couple of cases whereby they

2  say if the Court qualifies a person as an expert, that

3  puts too much of the Court's imprimatur on that witness's

4  testimony.  What I do say if a person is properly

5  qualified and it is determined that his or her testimony

6  is relevant, that is, it will assist the jury in

7  determining some issue or consequence in the case, and

8  that testimony is reliable, he or she may testify in the

9  form of an opinion.

10      We do not say a witness is an expert.  I want to

11  make certain everybody from both the defense and the

12  government understands that.  We do not use the term

13  "expert."  There some Fifth Circuit pattern jury

14  instructions on that.  Even before they came out, I was

15  instructing Counsel for both sides on that.

16      So I guess my concern is why would an expert be

17  explaining what the law is?

18          MR. MEITL: Your Honor, we are happy to work with

19  the parties and the Court if the Court thinks we need an

20  instruction on that.  I don't know that we do.

21          THE COURT: I think do you because -- well, I

22  guess what my concern is, there are several cases that I

23  know and a couple of criminal cases, the Court explains

24  what the law is not some individual.  There may be some

25  basic things, I mean, that everybody knows, but when you

1  get into complicated matters like this, that can be an

2  issue.

3         MR. MEITL: Yes, Your Honor.  I was going to cite

4  the United States versus All Funds court case that we

5  have cited in our pleadings, and the quote the Court

6  says, "Sophisticated drug money laundering activities

7  such as those relied on by the claimants are proper

8  subject for expert testimony.  The methods of moving

9  currency internationally and the maintaining of corporate

10  and bank records are not subjects easily understood

11  without some expert assistance."

12      Our witness, our opinion witness will testify as to

13  that.  We had intended to have him describe very

14  generally, very briefly, what it means to launder money.

15  If the Court doesn't like that, that is okay.  That is

16  generally what money laundering experts or opinion

17  witnesses do.  We can certainly adjust that if the Court

18  doesn't like that.  But I don't -- money laundering is a

19  term that lay people know.  They may not know what it

20  means.  That is where the opinion witness can come in and

21  explain it to them.

22         THE COURT: Basically, in lay terms be talk about

23  money laundering, it is money obtained from an illegal

24  source that is quote, unquote, cleaned up to make it

25  appear as though it came from a legitimate source.

1          MR. MEITL: Yes, Your Honor.

2          THE COURT: That's it in a nutshell.

3          MR. MEITL: That's right, and that's almost all

4   the opinion witness will say on that issue until moving

5   on to what happened in this case, but as the Court can

6   imagine there are some jurors who don't actually

7   understand what the Court just said so they need that

8   explained to them.  Now, if the Court preferred to have

9   that in an instruction, I am fine with that.  I don't

10  think it is necessary because I don't think we disagree

11  on what it is and the opinion witness can think that.

12  They have their own opinion witnesses they have

13  identified.

14          THE COURT: I want to make certain that the jury

15  which will be composed, I am almost certain, primarily of

16  lay people understand that.

17          MR. MEITL: Yes, Your Honor.  One other point I

18  would like to make though is this.  This evidence is not

19  going to pervade the trial.  I anticipate the first 20

20  witnesses, there won't be a reference to it because we

21  are going to be focused on the drug transactions and

22  interactions between the defendants and cooperators.

23      As we get towards the end of the case, we will start

24  focusing on Count 21 and there will be discussion of the

25  transactions that developed into Count 21 and then we

1  will bringing in a key cooperator that all the parties

2  know about, Mr. Novoa, and he will talk about his role in

3  that and what he was doing with Mr. Hinojosa.  And then

4  we will bring in the opinion witness, Mr. Lee, and he is

5  the one who is going to focus on that.  His testimony may

6  be an hour or two, so this is not something that is going

7  to be throughout the trial.  As I told the Court, we

8  narrowed down the issues and we're going to try to go as

9  rapid fire as we can.  This will not waste time.  This

10 will not confuse the jury and it is not prejudicial

11 because money laundering in and of itself is not

12 prejudicial.  It is no less prejudicial than accusing

13 someone of being involved in a massive drug conspiracy as

14 we have with Mr. Hinojosa.

15     Money laundering on its own is not murder.  It is

16 not rape.  It is not something that inflames the passions

17 of the juror.

18          MR. LEWIS: It is criminal.

19          MR. MEITL: He is charged with crimes.  We have

20 alleged crimes.  We have put him in conspiracy.  We are

21 alleging he is engaged in financial transactions to hide

22 money.  That is not the type of prejudicial evidence that

23 inflames a jury.

24     The type of evidence the Court would be concerned

25 about would some type of violent activity, some type of

1  sexual activity, something that every juror gets alarmed

2  about.  The money laundering testimony is going to be

3  very cold.  I don't anticipate that the jury is going to

4  find it all that interesting.

5          MR. LEWIS: Then don't put it on.

6          MR. MEITL: Just because it is not interesting

7  doesn't mean it is not relevant and not important.

8          MR. LEWIS: Judge, may I say something that cuts

9  right to the heart of the matter?

10         THE COURT: You may.

11         MR. LEWIS: You can only have money laundering if

12  you have dirty money.  They say the dirty money came from

13  cocaine sales in the bathroom, but they also say

14  paragraph 10, "Although, Hinojosa and these managers did

15  not personally sell or handle cocaine and did not take a

16  direct cut of the cash from cocaine sales."  There is no

17  money laundering.

18         MR. MEITL: That has never been our theory.

19         THE COURT: One at a time.

20         MR. LEWIS: There is no money laundering, if

21  there is no dirty money.  The government can't say that

22  they -- Hinojosa and the managers did not take a cut of

23  that cocaine that was being sold, the conspiracy.  But

24  here he is laundering money.  How is he laundering money

25  associated with this conspiracy if they didn't take a cut

1  of cocaine sales.

2      If they didn't take a cut of dirty money, there is

3  nothing to launder, and those are their words in the

4  superseding indictment, paragraph number 10.

5          MR. MEITL: Your Honor, that has never been our

6  theory of the case.  The cocaine that was sold in the

7  bathrooms is pennies, pennies on the dollar for what this

8  man was involved in.  He was not interested in a cut of

9  the little $20 bag of cocaine.  That has never been

10  theory.  We didn't allege it.  We never suggested that.

11  Mr. Lewis would know that -- he should know

12  that.  The theory of the government's case is he is

13  involved in massive money laundering for drug cartels,

14  and we have proof of that through a specific recorded

15  conversation where he then launders $140,000.

16          MR. LEWIS: That would be a different case.  That

17  wouldn't be in this indictment.

18          THE COURT: Wait a minute.  One at a time now.  I

19  will let each person say what he has to say, and we will

20  move on.  Do not interrupt Counsel.  Go ahead and finish

21  your point.

22      Mr. Lewis, you can counter.

23          MR. MEITL:  Your Honor, it is not separate.  It

24  is all connected.  The drug sales in the bathrooms drove

25  the revenue of the clubs.  The revenue of the clubs was

1   used as a front to launder the money for drug cartels.

2   He needed a sufficient cash basis in the clubs, a very

3   significant amount of cash that was flowing through

4   there, and he needed those clubs to be profitable.  They

5   couldn't close, so the cocaine sales allowed them to stay

6   open so he could launder money as he did, and that is

7   exactly what I think we can prove in this trial.

8        Now the cocaine sales in the bathroom themselves,

9   they could argue.

10        THE COURT: Can I ask a question?  If the

11   government can prove that he laundered the money, why

12   didn't the government just charge him with that?

13        MR. MEITL: Your Honor, I know the Court is not

14   asking me why we didn't charge certain counts versus --

15        THE COURT: I told my law clerk this is going to

16   be a real donnybrook.  It's going to go back and forth.

17   It will go back and forth, this issue, and I have not

18   decided which way I am going to rule on this because I

19   think to be honest with you, it's a much more complex

20   issue than either side realizes.

21        MR. MEITL:  Your Honor, there are lots of reason

22   we charged the case we did.  Some I can talk about in

23   court; some I cannot.

24        THE COURT: I understand.

25        MR. MEITL: But it is not because I don't think

1  he is engaged in money laundering.

2         THE COURT: No, I understand you have

3  prosecutorial discretion and all that.  My point is, I

4  guess you clarified this, you said the 702 witness

5  Mr. Lee's testimony would probably take an hour or so.  I

6  guess what you are telling me overall with respect to the

7  time the trial is going to take that is a small part of

8  the trial.  That is what I gathered from your comments.

9  I don't want to misinterpret anything you said, but that

10  was the gist of what I took from your earlier comments.

11         MR. MEITL: Yes, sir.  The money laundering

12  discussion will be limited to --

13         THE COURT: This is what I do not want to happen.

14  This is what I want to make certain is addressed.  If he,

15  Mr. Hinojosa is convicted, I want him convicted of the

16  counts in the indictment, not for the jury to say, Oh,

17  well, he committed money laundering, he must have done

18  this.  That is what my concern is.  It is just like

19  however you characterize the evidence, the question

20  becomes is whether it is going to cause confusion or

21  unduly prejudicial.  That is my concern.  And you have

22  addressed pretty much the, quote, unquote, waste of time

23  aspect of Federal Rules of Evidence 403, but my main

24  issues are confusion or undue prejudice, and we will take

25  another look at those cases cited by the government.

1      I do not think there is too much more that either

2  side can tell me at this point about this.  It is time

3  for the Court to make a decision.

4          MR. MEDDERS: Your Honor --

5          THE COURT: I am sorry, Mr. Medders, this monitor

6  blocked me.

7          MR. MEDDERS:  I was telling Mr. Gibson I need to

8  be taller.  Since we are talking about this, and it is

9  now moved over to this side of the room.  I would like to

10 ask the government for all of us just to identify, what

11 is the source of the laundered funds or alleged to have

12 been laundered?  You said it is not the drugs in the

13 bathroom.

14         MR. MEITL: Am I being cross-examined by

15 Mr. Medders at this point?

16         MR. MEDDERS: Tell the Court.  Don't tell me.

17         THE COURT: One at a time.  Let me hear what

18 Mr. Meitl has to say.

19         MR. MEITL: Does the Court want me to respond to

20 questions of Counsel?  The money laundering allegations

21 in the conspiracy in the drug conspiracy are clear in the

22 superseding indictment that the source of the laundered

23 funds is drug proceeds.  They are confused if they think

24 it is the cocaine sales in the bathroom.  That is not the

25 allegation.

1        MR. MEDDERS: Okay.

2        THE COURT: I am going to say this.  If the Court

3  allows this, I think we need some type of instruction at

4  a minimum.  I have not made a final decision, but if the

5  Court allows, I think to ensure the jury is not confused

6  or there is no undue prejudice, I need to make certain we

7  have some type of instruction and, frankly speaking, I

8  don't know that the instruction given in the Suarez case

9  would be sufficient in light what we have here, but we

10  will review those cases cited by the government.

11      The Court knows what the issue is, and we need to

12  move on.  It is going to take a couple days to pick the

13  jury at least, so there is no need for the parties to ask

14  me how the Court has ruled tomorrow or the next day.  You

15  will know before -- what the Court intends to do perhaps

16  before opening statement.

17      This is to both sides.  The case does not hang or

18  fall on opening statements because opening statement is

19  not evidence.  It is only what the parties believe the

20  evidence will show.  I will take this matter under

21  advisement.  I think I heard all of the arguments made.

22

23

24

25

1       *I certify that the foregoing is a correct transcript*
*from the record of proceedings in the above-entitled*
2   *matter.   I further certify that the transcript fees*
*format comply with those prescribed by the court and the*
3   *Judicial Conference of the United States.*

4        *S/Charyse C. Crawford*              *09-23-2021*
Signature_____ Date:_____
5           Charyse C. Crawford, CSR, RPR
United States Court Reporter
6           Northern District of Texas - Dallas Division
***

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25