UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| V.                      § | CASE NO. 3:16-CR-536 |
| § | |
| ALFREDO NAVARRO HINOJOSA § | |

### DEFENDANT HINOJOSA'S MOTION FOR JUDGMENT OF ACQUITTAL AND MOTION FOR NEW TRIAL

**TO THE HONORABLE JUDGE SAM A. LINDSAY:**

**COMES NOW**, Defendant Alfredo Navarro Hinojosa, by and through counsel, and respectfully moves this Court for a judgment of acquittal and motion for new trial pursuant to Federal Rules of Criminal Procedure Rules 29 and 30. Moreover, Defendant respectfully seeks leave of Court to join in Defendant Casas and Rodriguez's Rule 29 and Rule 33 motions. Defendant respectfully shows the following:

### I.     PROCEDURAL BACKGROUND

Defendant Alfredo Navarro Hinojosa is named in the superseding indictment [Doc. 125] for the instant case. The superseding indictment charges Defendant with seventeen counts of Managing a Drug Premises (Counts 1-19)[1]; one count of Conspiracy to Manage a Drug Premises (Counts 20); one count of Conspiracy to Structure Transactions to Evade Reporting Requirements (Count 21); and one count of Conspiracy to Possess with Intent to Distribute a Controlled Substance (Count 25). *See* Doc 125.

The trial in this case began on September 20, 2021. The government's case-in-chief concluded on October 5, 2021. At that point, counsel for Defendant moved for a judgment of

---

[1] The Government has since dismissed Counts 9 and 12.

acquittal under Rule 29 of the Federal Rules of Criminal Procedure. Simultaneously, the Court advised counsel that it would reserve its decision as authorized by subsection (b) of Rule 29.

Based on the evidence presented in the government's case-in-chief, no reasonable jury could possibly infer guilt beyond a reasonable doubt as the charges against Defendant Hinojosa even after viewing the evidence and credibility of the witnesses in a light most favorable to the government.

## II.     MOTION FOR JUDGMENT OF ACQUITTAL PURSUANT TO RULE 29

Federal Rules of Criminal Procedure Rule 29 provides that "[a]fter the government closes its evidence or after the close of all of the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Rule 29 further provides that the court may reserve its decision on the motion until after the jury returns a verdict of guilty or after the jury is discharged without having returned a verdict. Fed. R. Crim. P. 29(b). However, if the court reserves its decision on the motion, it ***must*** decide the motion on the basis of the evidence at the time the ruling was reserved. *Id*. (emphasis added).

In considering a motion under Rule 29, the court must view the evidence in light most favorable to the government at the time the motion for judgment of acquittal was made. *United States v. De Jean*, 613 F.2d 1356 (5th Cir. 1980); *see also* Fed. R. Crim. P. 29. "If the evidence tends to give nearly equal circumstantial support to either guilt or innocence then reversal is ***required***." *United States v. Gonzales*, 436 F.3d 560, 571 (5th Cir. 2006) (emphasis added). When the evidence is essentially in balance, "***a reasonable jury must necessarily entertain doubt***." *United States v. Moreno*, 185 F.3d 465, 471 (5th Cir. 1997) (internal quotation marks omitted) (emphasis added).

A.  **COUNTS 1-8, 10-11, 13-19, & 20**

To return a verdict of guilty regarding Counts 1-8, 10-11, and 13-19, which charged violations of 21 U.S.C. § 856, the evidence presented must be sufficient to allow a reasonable jury to find beyond a reasonable doubt that:

1. That such Defendant managed or controlled a place, whether permanently or temporarily;
2. That such Defendant was an owner, lessee, agent, employee, occupant, or mortgagee of such place; and
3. That such Defendant knowingly and intentionally made the place available, with or without compensation, for individuals to use, with knowledge that those individuals had the purpose of unlawfully using, storing, or distributing cocaine, which is a controlled substance.

To return a verdict of guilty for Count 20, which charged a conspiracy to commit violations of 21 U.S.C. § 856, the evidence presented must be sufficient to allow a reasonable jury to find beyond a reasonable doubt that:

1. Two or more persons, directly or indirectly, reached an agreement to manage a drug premises;
2. That Defendants knew of the unlawful purpose of the agreement; and
3. That Defendants joined in the agreement willfully, that is, with the intent to further its unlawful purpose.

Section 856, which was formally known as the "crack-house" statute, was modified in 2003 under the Illicit Drug Anti-Proliferation Act, Congress amended section 856 to include the language of now found in subsection (a)(2).  The purpose of the bill was to stop the prevalence of "club drugs" at raves, namely the illegal distribution of ecstasy at nightclubs to young people. *See* Illicit Drug Anti-Proliferation Act of 2003, S. 226, 108th Cong. (2003).  The proponent of the legislation (then Senator) Joe Biden, now President Biden, commented on the limitations of the bill to protect against the potential for its overbroad use in prosecuting venue owners.  Critics of the bill claimed, "there would be no way someone could hold a concert and not be liable and the

bill holds owners and promoters responsible for the actions of the patrons." 149 CONG. REC. 1669, 1677 (2003) (internal quotations omitted).

In response, President Biden assured that a "high bar" for prosecution would be set. *Id*. In explaining the purpose of the legislation, he assured:

> We know that there will always be certain people who will bring drugs into musical or other events and use them without the knowledge or permission of the promoter or club owner. This is not the type of activity that my bill would address. The purpose of my legislation is not to prosecute legitimate law-abiding managers of stadiums, arenas, performing arts centers, licensed beverage facilities and other venues because of incidental drug use at their events. In fact, when crafting this legislation, I took steps to ensure that it did not capture such cases. My bill would help in the prosecution of rogue promoters who not only know that there is drug use at their event ***but also hold the event for the purpose of illegal drug use or distribution***. That is quite a high bar.

*Id*. (emphasis added).

Here, the evidence presented was insufficient to sustain a conviction because a reasonable jury could not find beyond a reasonable doubt from the government's case-in-chief that the government proved the essential elements for the charged offenses.

Regarding Counts 1-8, 10-11, and 13-18, the Court should grant Defendant's motion for judgment of acquittal because there is no evidence that Defendant had any knowledge whatsoever that drugs were regularly being sold in the bathrooms of his venues. The evidence presented only showed that drug sales occurred. There was no evidence that Defendant had any knowledge of the sales occurring. The fact that drug sales occurred, alone, is insufficient to sustain a conviction for these charges, and that fact does not prove the essential elements of the charges.

Regarding Counts 19 and 20, the evidence presented in the government's case-in-chief only established that Defendant became aware of the drug sales occurring after March 25, 2015. Despite the law enforcement already wiretapping Defendant's phones and office, March 25, 2015,

is the first time that Defendant acknowledges the fact that drug sales are occurring in venues. The evidence at trial showed that law enforcement conducted a buy-bust at Defendant's clubs to create chatter on the wires. What was subsequently captured was a conversation where Defendant discusses how to resolve the problem. If Defendant did not view this situation as a problem, these conversations would not have taken place. None of the evidence in the government's case-in-chief establishes beyond a reasonable doubt that Defendant's purpose for having the venues open to the public or bringing in bands was to further illegal drug sales at his venues, which is the conduct Congress sought to eradicate. 149 Cong. Rec. 1669, 1677 (2003).

The government called various witnesses at trial, including law enforcement agents who purchased drugs in the venues, codefendants, and two security guards who worked at the venues. Law enforcement obtained post arrest statements from various lower-level drug dealers who said that they were told by the main drug distributor, Juan Lara, that management allowed them to sell in the bathrooms. Lara, however, told law enforcement and the government that he made that fact up and that he never had an agreement with management. Lara, when called to testify, confirmed that he made up the agreement with law enforcement before the jury.

The two security guards, Luis Rendon and Juan Julio Rodriguez, who testified were conveniently able to avoid prosecution. Their testimony was that Defendant and other management instructed them to allow sales to occur in the bathrooms. Lara, however, testified that he paid both Rendon and Rodriguez for protection while in the venues. It logically follows that if Lara was given permission by Defendant and management to sell in the venues, he would not need to pay for protection from the security guards. The drug dealers that testified also stated they were to make sure that security personnel did not see them selling in the bathrooms. Again,

it logically follows that if there was an agreement to allow the sales, there would not be a need to try to hide drug sales from security staff.

Rendon and Humberto Novoa both testified about a "meeting" where it was determined that drug sales would resume in the venues after the March 2015 buy-bust. At no point was any witness able to pinpoint when this alleged meeting actually occurred. The only evidence that the government was able to introduce regarding resumed drug sales was the last controlled purchase on October 14, 2016. During this time, the government was still monitoring Defendant's movements and phones. Despite the ability to listen to Defendant's calls, the only evidence that was recorded was a discussion of how to police the venues. The alleged meeting Novoa and Rendon speak of was never captured or recorded.

The government relied most heavily on Defendant's July 10, 2017, statement to law enforcement. This statement was given without any advice from Defendant's attorney. Indeed, initially Defendant wholly denied all of the allegations until the government told his attorney that there was a problem. After a short break, Defendant began to give rote answers to the government's questions as the prosecutor walked him through the elements of the crime.

Accordingly, in reviewing the evidence from trial, a reasonable jury would necessarily entertain doubt after being presented with the government's case-in-chief. As such, the evidence in the government's case-in-chief was insufficient to sustain a conviction for the charges because no reasonable jury would find that the government established every essential element of the charges beyond a reasonable doubt.

B. COUNT 21

To return a verdict of guilty regarding Count 21, which charged a conspiracy structure

transactions to evade reporting requirements under 31 U.S.C. § 5324(a)(2), the evidence presented must be sufficient to allow a reasonable jury to find beyond a reasonable doubt that:

1. That Defendant Hinojosa and at least one other person made an agreement to commit the crime of structuring transactions to evade reporting requirements;
2. That Defendant Hinojosa knew the unlawful purpose of the agreement and joined in it willfully, that is, with the intent to further the unlawful purpose; and
3. That one of the conspirators during the existence of the conspiracy committed at least one of the overt acts described in the Indictment to accomplish some object or purpose of the conspiracy.

The essential elements of the offense of structuring transactions to evade reporting requirements include:

1. That the Defendant knowingly and intentionally caused or attempted to cause a domestic financial institution to file a Currency Transaction Report ("CTR") that contained a material omission or misstatement of fact; and
2. That the purpose of the structure transaction was to evade that reporting obligation.

The Bank Secrecy Act requires that a financial institution complete and file a CTR when a transaction involves more than $10,000.00 in currency. That is, the Bank Secrecy Act imposes the initial obligation on the financial institution to complete a CTR when a transaction triggers the reporting requirement. This duty lies solely with the financial institution to complete.

The CTR has standard information that must be obtained pursuant to a triggering transaction. A financial institution's employee is charged with obtaining the necessary information and asking the requisite questions to obtain the necessary information to complete a CTR. It necessarily follows that in order to cause a financial institution to file a CTR that contains a material omission or a misstatement of fact, the predicate of the financial institution's employee actually fulfilling their obligation must occur. If, however, the employee does not ask the requisite questions or completes the information in the CTR using information from previous transactions

or completes the CTR after the depositor has left, it cannot be said that the depositor provided information that contained a material omission or a misstatement of fact.

In this case, the evidence introduced in the government's case-in-chief was glaringly deficient in establishing whether or not the initial obligation of the financial institution was met, and a reasonable jury could not have found that Defendant conspired to commit the offense charged in Count 21 beyond a reasonable doubt. First, the evidence that was presented in the government's case-in-chief established the financial institution's duty to obtain the requisite information from the depositor. The government's financial witnesses—Stephen Noll, Kim Townsley, and Eric Lee—all testified that the initial duty for a CTR is on the bank to ask the requisite questions to obtain information.

Second, the government wholly failed to introduce any evidence that this obligation was met during its case-in-chief. The government did not call any witnesses in its case-in-chief with personal knowledge of the discrete transactions that occurred in this case on May 21st and 22nd of 2015. That is, there was absolutely no evidence before the jury regarding whether the financial institution's obligation was met so there is no way of decerning whether the information provided pursuant to the transactions included material omissions or misstatements of fact.

Accordingly, a reasonable jury would necessarily entertain doubt after being presented with the government's case-in-chief. As such, the evidence in the government's case-in-chief was insufficient to sustain a conviction for the charges because no reasonable jury would find that the government established every essential element of the charges beyond a reasonable doubt.

C. **COUNT 25**

To return a verdict of guilty regarding Count 25, which charged a conspiracy to distribute

and possess with the intent to distribute a controlled substance, the evidence presented must be sufficient to allow a reasonable jury to find beyond a reasonable doubt that:

1. That two or more persons, directly or indirectly, reached an agreement to possess with the intent to distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance;
2. That each Defendant knew of the unlawful purpose of the agreement;
3. That each Defendant joined in the agreement willfully, that is, with the intent to further its unlawful purpose;
4. That the overall scope of the conspiracy involved at least five kilograms of a mixture and substance containing a detectable amount of cocaine; and
5. That each Defendant knew or reasonably should have known that the scope of the conspiracy involved at least five kilograms of a mixture and substance containing a detectable amount of cocaine.

The evidence regarding this count is wholly insufficient as there is no evidence that Defendant ever possessed with the intent to distribute any of the controlled substance. The government failed to prove the alleged agreement ever even occurred. *See United States v. Gonzales*, 436 F.3d 560, 571 (5th Cir. 2006) (If the evidence tends to give nearly equal circumstantial support to either guilt or innocence then reversal is ***required***.).

Furthermore, the evidence presented in the government's case-in-chief is wholly insufficient for a reasonable jury to find beyond a reasonable doubt that Defendant possessed with the intent to distribute 5 kilograms or more. At trial, the evidence in the government's case-in-chief proved 38 grams of cocaine.

Once again, the main drug supplier in this case was Juan Lara. He testified that he completely lied about having any sort of agreement with Defendant or management to allow drug sales in the venues. However, he did state that he paid off security guards for protection in the clubs. In stands to reason that these security guards also hid the drug sales from Defendant and management.

### III.  MOTION FOR NEW TRIAL PURSUANT TO RULE 33

Federal Rules of Criminal Procedure Rule 33 provides that a court may, upon a defendant's motion vacate any judgment and grant a new trial if the interest of justice requires. A judge who exercises his authority conferred under Rule 33 does not need to assign a reason other than that it is required in the interest of justice. *United States v. Smith*, 331 U.S. 469 (1947). A new trial in this case is required in the interests of justice because the evidence was insufficient to sustain a conviction in this case.

**WHEREFORE, PREMISES CONSIDERED**, Defendant respectfully moves this Court to grant his motion for judgment of acquittal because the evidence in the government's case-in-chief was insufficient to sustain a conviction for the charges of conviction because no reasonable jury would find that the government established every essential element of the charges beyond a reasonable doubt. Additionally, Defendant respectfully requests that this Court grant his motion to adopt Defendant Casas and Rodriguez's motions under Rule 29 and Rule 33.

Respectfully submitted,

**Chris Lewis & Associates, PC**
1717 Main Street, Suite 4625
Dallas, Texas 75201
214.665.6930 (Office)
214.665.6940 (Facsimile)


By: /s/ Christopher W. Lewis
    **Christopher W. Lewis**
    State Bar No. 24004765
    CLewis@lewisdefense.com
    **Lukas Garcia**
    State Bar No. 24100578
    LGarcia@lewisdefense.com

    **Attorneys for Alfredo Hinojosa**

## CERTIFICATE OF SERVICE

      I certify that on December 13, 2021, I electronically filed this document with the Clerk of Court for the Northern District of Texas, using the electronic case filing (ECF) system of the Court, and thereby served it on counsel of record in this case.

      /s/ Christopher W. Lewis
      Christopher W. Lewis